TALK OF THE TOWN BOOKSTORE, PEEK–A–RAMA, JACK LEE MARCUM, DOES I THROUGH V, AND DOE CORPORATIONS I THROUGH II, APPELLANTS, *v.* CITY OF LAS VEGAS, A MUNICIPAL CORPORATION, RESPONDENTS.

No. 7728

TALK OF THE TOWN BOOKSTORE, INC., DOING BUSINESS AS THE TALK OF THE TOWN BOOKSTORE, AND THE PEARL, APPELLANTS, *v.* CITY OF LAS VEGAS, A MUNICIPAL CORPORATION, AND J. E. DUTTON, DIRECTOR OF LICENSING, CITY OF LAS VEGAS, NEVADA, RESPONDENTS.

No. 7774

August 31, 1976                    553 P.2d 959

*Alan B. Andrews,* Las Vegas, for Appellants.

*Carl Lovell,* City Attorney, and *Daniel E. Ahlstrom,* Deputy City Attorney, Las Vegas, for Respondents.

## OPINION

By the Court, GUNDERSON, C. J.:

On application of the City of Las Vegas, the district court enjoined operation of appellants' established bookstore businesses until such time as the City Commission saw fit to issue "privileged" business licenses pursuant to Las Vegas Ordinance 1627. The court also denied appellants' petition for a writ of mandamus to compel immediate issuance of such licenses. We reverse the injunction, since Ordinance 1627 is manifestly unconstitutional; however, we affirm the order denying the immediate issuance of business licenses, since it does not appear license applications are now pending under any valid city ordinance.

Without defining the term "adult oriented" in any way, Ordinance 1627 classifies "adult oriented" bookstores as "privileged" businesses and, if valid, would constrain license applicants who feared their businesses might be deemed "adult oriented" to pay for investigation of persons "associated" with their stores' management or ownership.[1] In practice, police department agents apparently "investigate" without criteria to guide or limit their inquiry, other than their own notions of relevance. Applicants are required to submit personal history and financial status questionnaires. They must also ultimately submit to inquiry before the City Commission, the scope of which is unlimited by any express criteria. Grounds for withholding a license do not appear in Ordinance 1627, or elsewhere in the City Code. Such undefined, *ad hoc* licensing procedures are not imposed on applicants who apply for ordinary bookstore licenses.

---

[1]Ordinance 1627, adopted May 16, 1973, provides as follows: "All adult oriented bookstores and adult oriented theatres shall be classified as privileged business licenses. All said applications for a privileged business license shall pay a minimum fee of Fifty Dollars ($50.00) as and for an investigation fee for each and every person associated with either the management or the ownership of any adult oriented bookstores and/or adult oriented theatres." Las Vegas, Nev. Municipal Code, Title V, ch. 1, § 24.

In June, 1973, appellant Talk of the Town Bookstore, Inc., purchased two established businesses, the "Talk of the Town" and the "Pearl" bookstores, for which the prior owner had obtained "privileged" business licenses. Although the municipal code does not explicitly treat the issue, apparently the Las Vegas Licensing Bureau permits a new owner to continue business under the existing license, if the prior owner consents. Appellants received such permission and conducted the business under the prior owner's licenses without incident for nine months. On March 29, 1974, the prior owner requested that the Licensing Bureau remove her name from appellants' licenses, but stated she did not object to the bookstores remaining open. However, in an affidavit executed April 3, 1974, she demanded the bookstores be closed. Pursuant to this affidavit, the Licensing Bureau ordered appellants to cease business operations until new licenses were issued. Appellants applied for "privileged" business licenses, which to date have not been issued, but refused to terminate business operations.

Due to the continuation of business, Las Vegas petitioned for an injunction restraining appellants' bookstore operations until new licenses were issued. Simultaneously, appellants, attacking the constitutionality of Ordinance 1627, sought a writ of mandamus ordering immediate issuance of licenses without the delay necessitated by a police investigation, which could be as long as six months. The district court granted the injunction and denied the writ of mandamus holding the constitutionality of the ordinance was not properly before it. Appellants, even though properly operating under the prior owner's business licenses, were also held to have "unclean hands" for failing to apply for new licenses when they first acquired the bookstores.

The record does not reflect in detail what these stores purvey; however, the City Attorney concedes they sell lawful merchandise, magazines such as *Esquire, Playboy,* and *Penthouse,* and, for all he knows, newspapers customarily distributed in the locale. For all that appears of record, the businesses were operated the same after the sale as before, in a manner the police felt unable to challenge as criminal. If appellants, or the former owner, have ever sold material violative of any valid law or ordinance, such transgressions are not before us. Of course, supposing such transgressions have occurred, or hereafter occur, it would be the City Attorney's duty to prosecute those responsible. We deal only with the issues as presented.

Appellants challenge the constitutionality of Ordinance 1627 on numerous grounds. Their main contentions are: (1) because the ordinance lacks standards for the issuance of a

license, it gives unlimited discretion to public officials and is therefore an unconstitutional prior restraint on the exercise of first amendment freedoms; and (2) the ordinance draws an impermissible distinction between "adult oriented" and other bookstores. Since the first contention clearly has merit, we will merely discuss and not finally decide arguments concerning the second contention.

1. The United States Supreme Court has condemned any system of prior restraint of first amendment rights. Near v. Minnesota, 283 U.S. 697 (1931). The first amendment presumptively protects the publication and dissemination of books and other printed material. Smith v. California, 361 U.S. 147 (1959). First amendment protections are not diluted merely because the books are sold for profit, although the selling itself is not exempt from reasonable regulation. Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495 (1952). Ordinance 1627 is a form of prior restraint in that it requires "adult oriented" bookstores to obtain permission (a license) from city officials before any ideas, whether they are obscene or protected by the first amendment, can be communicated via the dissemination of books. Burstyn v. Wilson, cited above. Because it is a system of prior restraint, Ordinance 1627 bears a heavy presumption of unconstitutionality. Bantam Books, Inc. v. Sullivan, 372 U.S. 58 (1963).

To be constitutionally acceptable, ordinances authorizing public officials to license conduct presumptively protected by the first amendment must establish precise, narrowly drawn standards under which the license is to be granted or denied. Shuttlesworth v. Birmingham, 394 U.S. 147 (1969); Interstate Circuit v. City of Dallas, 390 U.S. 676 (1968); Freedman v. Maryland, 380 U.S. 51 (1965); Staub v. City of Baxley, 355 U.S. 313 (1958). Without such standards, public officials would have the impermissible power of censorship in the guise of unbridled or excessive discretion to deny a license. As noted, Ordinance 1627 recites no standards whatever, but instead, vests the City Commission with unlimited discretion to grant or deny a license. In light of this fact, no serious argument to support its constitutionality can be or has been made.

2. Even if incorporated in a properly drafted ordinance, considerations that now apparently are utilized as grounds for denying a license would be highly suspect. For example, it may be questioned that the right to free speech, or right to engage

in the business of selling material presumptively protected by the first amendment, can be denied due to a finding of bad character or prior criminal activity. See: Schneider v. State, 308 U.S. 147 (1939); Perrine v. Municipal Ct. East L.A., Jud. Dist. of L.A. Co., 488 P.2d 648 (1971). Indeed, the City Attorney concedes first amendment rights cannot be so infringed.[2] Likewise, it may be argued that a citizen's financial status, like race, creed, or color, is a constitutional irrelevance and cannot be used to test, qualify, or limit first amendment freedoms. See: Harper v. Virginia Bd. of Elections, 383 U.S. 663 (1966); Douglas v. California, 372 U.S. 353 (1963). Murdock v. Pennsylvania, 319 U.S. 105 (1943). This the City Attorney also concedes.[3]

In sum, the City Attorney agrees that even after applicants for "adult oriented" bookstore licenses submit to all the inquiries, investigations, and hearings imposed by Ordinance 1627, their licenses, as with any other type of bookstore license, can still only be denied upon the grounds of building, fire, or zoning violations.[4] All this brings into focus the second major

---

[2] COURT: "You would agree, would you not Mr. Ahlstrom, that it doesn't matter how many prior convictions an individual has sustained, that the City of Las Vegas cannot refuse him the right of free speech, and therefore cannot refuse him the right to sell newspapers, magazines, and other presumptively first amendment material?"

COUNSEL: "I would agree with that statement, your Honor."

[3] COURT: "Well, they [city commissioners] couldn't turn him [an applicant] down on the basis of his financial status, could they?"

COUNSEL: "They could not."

COURT: "Well then, why is it a legitimate interest of the city to have a financial statement if they can't base any judgment on the financial information that is contained? You agree that they couldn't turn them [applicants] down on the basis of any financial condition that might be reflected by the application?"

COUNSEL: "I would agree with that, your Honor."

[4] COURT: "So, the only thing [standard] you can think of that they [the city commissioners] could deny it [the license] on is building, fire, or zoning code violations? Is that correct?"

COUNSEL: "That is correct."

COURT: "Those are the only standards that they are going to apply, and on which they are going to deny a license to an 'adult oriented' bookstore? Is that correct, and that would be your advice to the city commission under this ordinance, is that correct?"

COUNSEL: "That is correct."

COURT: "Let's take non-'adult-oriented' bookstores. They don't have to go through this special privileged licensing material and appear before the board, correct?"

COUNSEL: "Correct."

COURT: "They don't have any special inquiry into their building, fire, and zoning violations, correct?"

COUNSEL: "No, they do have. All businesses have that inquiry. The

constitutional issue in this case, i.e., whether the distinction drawn between "adult oriented" and other bookstores, requiring the former to submit to totally different, burdensome licensing procedures, is violative of equal protection guarantees provided in the Fourteenth Amendment to the Constitution of the United States.

Of course, for the mentioned distinction to be constitutionally permissible, it must not only have a rational basis, but also be reasonably related to a valid muncipal interest. Laakonen v. District Court, 91 Nev. 506, 538 P.2d 574 (1975); Doubles Ltd. v. Gragson, 91 Nev. 301, 535 P.2d 677 (1975). While the city's counsel acknowledges that censorship is not such an interest, Counsel has omitted to so advise the city fathers.[5] If another interest or purpose exists, it apparently is unknown to the city's counsel.

Since it is unnecessary for the disposition of this case, we do not finally decide whether the distinction drawn by Ordinance 1627 is violative of equal protection guarantees. It is sufficient that Ordinance 1627, which vests unlimited discretion in city officials due to lack of objective standards, is a prior restraint of first amendment freedoms and, therefore, unconstitutional on its face.

---

distinction is that a regular bookstore would not come before the city commissioners."

COURT: "What is the constitutional basis for the distinction between 'adult oriented' bookstores and other bookstores? You recognize that under the decisions of the United States Supreme Court that if a distinction is to be drawn, there must be a rational basis for that distinction. You understand those cases, don't you?"

COUNSEL: "I understand those cases."

COURT: "Then what is the difference between an 'adult oriented' bookstore and a non-'adult oriented' bookstore insofar as building, fire, and zoning regulations are concerned?"

COUNSEL: "There are none."

[5]We note the city commissioners have never been advised they do not have the power to censor a bookstore, prior to the issuance of a license, based on material that might be sold in the future:

COUNSEL: "The City Commission would be ill advised to attempt to censor any bookstore, whether it be privileged or not, on the basis of the material they are going to sell before they issue a license. They legally cannot entertain it."

COURT: "Have you told them that?"

COUNSEL: "I don't believe they have been told."

In its granting of an injunction, the district court is reversed; in denying mandamus, the court is affirmed.

BATJER, ZENOFF, MOWBRAY, and THOMPSON, JJ., concur.