31753. COLEMAN et al. v. BRADFORD et al.

INGRAM, Justice.

The Chatham County Commissioners have appealed an order of the Superior Court of Chatham County which held unconstitutional a county ordinance adopted to license and regulate adult entertainment establishments in the unincorporated area of the county. The appellee owns and operates a motion picture theater affected by the county ordinance.

Prior to the filing of this suit by the appellee, Chatham County had two ordinances applicable to motion picture theaters. One, adopted in 1970, governs the licensing and operation of theaters in general. The other ordinance was adopted in 1974 and it is the subject of this lawsuit. This ordinance purports to regulate the licensing and operation of businesses, including motion picture theaters, which specialize in "adult entertainment." In 1975, the appellee, doing business as the Showboat Cinema, applied for and obtained a license under the 1970 ordinance after paying the required $500 fee. He did not apply for an adult theater license under the 1974 ordinance.

After receiving complaints about the appellee's theater, appellants had the police investigate it. Their investigation revealed that films were shown by the Showboat Cinema on a weekly basis and that these films were either X-rated or depicted nudity or sexual conduct. Subsequently, appellants served notice on the appellee of a hearing to consider revocation of appellee's general theater license because that license did not authorize him to operate an adult movie theater. The appellee was represented by counsel at the hearing. It resulted in

various findings of fact by appellants upon which they based their conclusion that the Showboat theater was an adult theater and should be licensed under the 1974 ordinance. Appellee was told to stop doing business until he obtained a proper license. Instead, the appellee filed the present suit attacking the constitutionality of the ordinance and seeking injunctive and declaratory relief.

The trial court, after a hearing, enjoined appellants from enforcing the 1974 adult movie provision of the ordinance. Additionally, the trial court found the ordinance to be unconstitutional as it pertains to adult movie theaters. Specifically, § 2 (E) of the ordinance was found to be invalid. This section states:

"§ 2 (E). Adult movie houses, which on a regular, continuing basis show nonobscene films rated X by the Motion Picture Coding Association of America, or any movie theater which presents for public viewing on a regular and continuing basis so called 'adult films' depicting nudity or sexual conduct, shall pay an annual license fee of $1,500."

This language is substantially a restatement of Ga. L. 1971, p. 888, § 4, at 889 (Code Ann. § 23-3403 (Rev. 1971)). Under § 18 of the ordinance, violations of § 2 (E) are made subject to criminal penalties.[1] The ordinance also contains a myriad of standards which an applicant must meet in order to obtain a license. The trial court found the ordinance to be void for vagueness, overbroad, a prior restraint on First Amendment rights, and a violation of equal protection when applied to adult movie theaters.

We note at the outset that this ordinance is not intended to regulate or control the dissemination of

---

[1] The Chatham County ordinance also contains a locational prohibition which is an enlarged restatement of Ga. L. 1971, p. 888, § 2 at 889 (Code Ann. § 23-3402). This section is not at issue in this case but we note that the basic statutory provision was held to be unconstitutional in *Sanders v. State of Ga.*, 231 Ga. 608 (203 SE2d 153) (1974). *Sanders* was decided five months before the Chatham County ordinance was enacted.

obscene materials. Rather, by its terms, it deals specifically and exclusively with films that are not obscene. Thus, this ordinance is an attempt to regulate materials which are a form of expression fully protected by the First Amendment. Joseph Burstyn, Inc. v. Wilson, 343 U. S. 495 (72 SC 777, 96 LE 1098) (1952). Because these films are constitutionally protected, we conclude that this ordinance imposed an invalid prior restraint on the freedom of speech and is a violation of the equal protection clause.

The appellants argue strenuously that these conclusions are inconsistent with the recent pronouncements of the Supreme Court in Young v. American Mini Theatres, 427 U. S. 50 (96 SC 2440, 49 LE2d 310) (1976). In Young, the Supreme Court considered two Detroit, Michigan, zoning ordinances which provided that adult theaters, and certain other specified businesses, were "regulated uses." Such businesses were prohibited by this ordinance from locating within 1,000 feet of any two other "regulated uses."[2] The ordinances were attacked on three grounds: vagueness; that the ordinances were prior restraints; and that classification on the basis of the content of the films violates equal protection.

In disposing of the vagueness issue, the court held that the ordinances clearly applied to the respondent theaters and rejected the argument. 427 U. S. 62. The court further held that the ordinances did not constitute invalid prior restraints on first amendment rights because the market for adult films was "essentially unrestrained" by the zoning scheme. Id., p. 62. Finally, the court rejected the equal protection argument and held that, "[e]ven though the First Amendment protects communication in this area, . . . the State may legitimately use the content of these materials [adult films] as the basis for placing them in a different

---

[2] The ordinance also prohibited a "regulated use" from locating within 500 feet of a residential area. This provision was neither appealed nor considered in Young, p. 52, n. 2.

classification from other motion pictures." Id., p. 70.

Despite the vigorous argument of appellants to the contrary, after a careful analysis of the Young opinion we do not believe that it is controlling in this case for two reasons. In the first instance, Young dealt with a zoning ordinance, not a licensing ordinance. The Detroit ordinance was aimed at a wide spectrum of "regulated uses" including hotels, secondhand stores, shoeshine parlors, and pawnshops. 427 U. S. 52, n. 3. In this context the court ruled that the zoning restriction did not, by itself, impermissibly restrain the freedom of speech. Id., p. 62. The Chatham County ordinance, however, clearly imposes restraints greater in number and magnitude than those considered in Young. In fact, the Young court conceded that "[t]he situation would be quite different if the ordinance had the effect of suppressing, or greatly restricting access to, lawful speech." Id., p. 71. We conclude the present case is distinguishable from Young and, therefore, not controlled by it.

We also note that the part of the Young opinion which deals with the equal protection issue (Part III, p. 63) was not embraced by a majority of the court.[3] This holding, therefore, cannot be considered binding on this court as being dispositive of the federal question involved.

The trial court ruled the Chatham licensing ordinance imposed invalid restraints on First Amendment rights. There is no presumption of legislative validity where First Amendment freedoms are involved. See Erznoznik v. City of Jacksonville, 422 U. S. 205, 215 (95 SC 2268, 45 LE2d 125) (1975). Consequently, we must examine the effect of the legislation in considering a constitutional challenge and the stated purpose of the enactment does not bar judicial inquiry. See United

[3] The opinion, written by Justice Stevens, was joined by Chief Justice Burger, and Justices White and Rehnquist. Justices Brennan, Marshall, Stewart and Blackmun dissented. Justice Powell concurred specially and specifically disclaimed agreement with the equal protection holding. Concurring opinion, 427 U. S. 73, n. 1.

States v. O'Brien, 391 U. S. 367 (88 SC 1673, 20 LE2d 672) (1968); Gomillion v. Lightfoot, 364 U. S. 339 (81 SC 125, 5 LE2d 110) (1960). Appellants urge that the ordinance is merely a simple regulation concerning the time and circumstances of business operations as stated in the ordinance. However, since it deals with constitutionally protected expression, we will examine the actual effect that flows from it.

We think the effect of the ordinance is to inhibit and chill the showing of admittedly nonobscene motion pictures. We reach this conclusion because of the numerous, extensive, and imprecise licensing standards and the high license fee charged for these theaters in contrast to other theaters showing nonobscene films. When these factors are considered with the heavy penalties for violations, our conclusion is inescapable. This ordinance can be used as a device whereby nonobscene, but perhaps offensive and distasteful, films may be suppressed without resort to the obscenity statutes. Our Bill of Rights will not permit this to be done. Cf. Bantam Books, Inc. v. Sullivan, 372 U. S. 58 (83 SC 631, 9 LE2d 584) (1963). We are not unmindful of appellant's argument that total suppression does not result from the ordinance. It just is not persuasive under the circumstances of this case. See Southeastern Promotions, Ltd. v. Conrad, 420 U. S. 546, 556, n. 8 (95 SC 1239, 43 LE2d 448) (1975); and, cf. Interstate Circuit v. Dallas, 390 U. S. 676 (88 SC 1298, 20 LE2d 225) (1968); and, Bantam Books, Inc. v. Sullivan, supra. We hold the trial court correctly concluded that this ordinance constitutes an invalid prior restraint on First Amendment freedoms and the injunction was proper.

The trial court also determined the ordinance was a violation of equal protection because adult movie theaters are treated differently from other theaters showing nonobscene movies solely because of the content of the films presented. The standard upon which a review of this classification must be made is one of close scrutiny. See Erznoznik, supra; Police Department of Chicago v. Mosley, 408 U. S. 92 (92 SC 2286, 33 LE2d 212) (1972). Under this test the government imposing the classification bears a heavy burden. It must show that the classification is in

furtherance of a compelling state interest and that any discrimination incidental to the classification is no greater than that essential to the furtherance of the compelling state interest. See generally Erznoznik v. City of Jacksonville, supra; Police Department of Chicago v. Mosley, supra; Dunn v. Blumstein, 405 U. S. 330 (92 SC 995) 31 LE2d 274 (1972); United States v. O'Brien, supra. The appellants have not carried this burden nor do we think they can. It has been said that classifications based on the content of protected expression "is never permitted." Mosley, 408 U. S. at 99. Perhaps this is too broad a statement. Nevertheless, it is clear from cases decided before Young that the state interest involved must certainly be a compelling interest. See e.g. Erznoznik, supra. The interest asserted here, i.e., to protect "public health, safety, and morality," is insufficient to overcome the constitutional protection. But, even if it were, the means utilized by Chatham County in this ordinance are not sufficiently narrow to pass constitutional muster. We affirm the ruling of the trial court.

In conclusion, it should be observed that we are sympathetic with appellants' concerns and efforts to protect the public from what many citizens would conclude are trashy films. But this is a matter of taste and even films considered to be of bad taste are protected by the First Amendment. Consequently, the invalidation of this ordinance should not be considered as any expression of approval of the kinds of films shown in these adult theaters. The exhibition of these films may flunk the good taste test but they are protected speech, and we hold only that protected speech is just that — protected. The trial court was correct in its judgment.

*Judgment affirmed. All the Justices concur, except Hall, J., who concurs in the judgment only, and Jordan, J., who dissents.*

ARGUED JANUARY 10, 1977 — DECIDED MARCH 9, 1977.

*Anton F. Solms, Jr., Leonard W. Childs, Jr.,* for appellants.

*Barker & Edenfield, Robert E. Barker, Falligant,*

*Sims & Hunter, Robert E. Falligant, Jr.,* for appellees.

JORDAN, Justice, dissenting.

I find no objections, constitutional or otherwise, to the ordinance here under scrutiny. It is not the bug-a-boo depicted by the majority but a simple permissible regulation concerning a business operation. The distinction between licensing fees applicable to regular motion picture theaters and "adult entertainment" theaters is reasonable, based on the tremendous difference in the admission prices of one over the other.