33792. AIRPORT BOOK STORE, INC. et al. v. JACKSON et al.

HILL, Justice.

In January, 1977, the Atlanta City Council adopted and the Mayor approved an ordinance to require licensing of certain sex-related businesses. The ordinance uses the phrase "adult entertainment establishments" both generically and technically. Section 1 of the ordinance states that its purpose is, among other things, to provide standards for licensing adult entertainment establishments.

The ordinance then provides for licensing of five types of businesses: adult entertainment establishments, adult bookstores, adult motion picture theaters, adult mini motion picture theaters, and adult cabarets. These five categories of businesses are defined technically as set out in the footnote.[1]

---

[1]"(1) *Adult Entertainment Establishment* — any building or structure which contains, or is used for

The ordinance lists a dozen pieces of information, financial and otherwise, which must be furnished by the license applicant, including any further information that

---

commercial entertainment, whether a place where musical entertainment is carried out consisting of a series of unrelated episodes and dances, all with the purpose of depicting or suggesting sex-centered subjects or objects or a place where the patron is charged a fee to dance or view a series of dance routines, strip performances or other gyrational choreography provided by the establishment that depicts or suggests sex-centered subjects or objects. Nothing herein defined shall in any way or form legitimize any activity prohibited by State law or City Ordinance.

"(2) *Adult Book Store* —an establishment, having as a substantial or significant portion of its stock in trade, books, magazines, and other periodicals which are distinguished or characterized by their emphasis on matter depicting, describing or relating to nudity or sexual conduct. As used within this section 'nudity' means the showing of the human male or female genitals, pubic area or buttocks with less than a full opaque covering, or the depiction of covered male genitals in a discernibly turgid state, and 'sexual conduct' means acts of masturbation, homosexuality, sodomy, sexual intercourse, or physical contact with a person's clothed or unclothed genitals, pubic area, buttocks or, if such person be female, breast.

"(3) *Adult Motion Picture Theatre* — an enclosed building with a capacity of 50 or more persons used for presenting material distinguished or characterized by an emphasis on matter depicting, describing or relating to 'nudity' and 'sexual conduct,' as heretofore defined under this chapter, for observation by patrons therein.

"(4) *Adult Mini Motion Picture Theatre* —an enclosed building with a capacity for less than 50 persons, used for presenting material distinguished or characterized by an emphasis on matter depicting, describing or relating to nudity or sexual conduct. As used within this section 'nudity' means the showing of the human male or female

may be required by the license examining bureau.

The ordinance specifies as ground for denial of a license that no license or renewal license shall be issued to any applicant which has as owner, partner, officer or principal shareholder, a person convicted within 5 years "for any felony or misdemeanor of any state or of the United States or any municipal ordinance involving a crime of moral turpitude or relating to sexual offenses and related matters, to alcohol or drug offenses and related matters, or to gambling offenses and related matters."[2]

The ordinance prohibits employment by licensees of persons who have within the preceding 5 years been convicted of these same offenses (except gambling). It requires that licensees' employees have permits and prohibits the issuance of such permits to persons who have within 5 years "been convicted of any felony, misdemeanor or ordinance violation involving sex related, alcohol related or drug related offenses."

The ordinance prescribed a $500 investigation fee. Although not in issue now, whether this same fee would

---

genitals, pubic area or buttocks with less than a full opaque covering or the depiction of covered male genitals in a discernibly turgid state, and 'sexual conduct' means acts of masturbation, homosexuality, sodomy, sexual intercourse or physical contact with a person's clothed or unclothed genitals, pubic area, buttocks or, if such person be female, breast, or an enclosure wherein coin or slug-operated, or electrically, electronically or mechanically controlled adult amusement machines are maintained or where mechanically controlled still or motion picture machines, projectors or other image-producing devices are maintained to depict nudity or sexual conduct, as heretofore defined.

"(5) *Adult Cabaret* — a cabaret which features go-go dancers, exotic dancers, strip dancers or other similar entertainers, dancers or employees."

[2]The other grounds for denial of a license are that the application contains a material omission or untrue information, the zoning, fire or building codes would be violated, or the applicant has had a license issued under the city's police power revoked or suspended.

be payable upon application for renewal of the annual license is unclear.

The ordinance provides that a license may be revoked "for cause," after notification and hearing. It contains prohibitions upon employing minors and upon permitting them to frequent adult entertainment establishments as customers. It requires existing adult entertainment establishments to obtain licenses within 6 months and it contains a severability clause.

Airport Book Store, Inc., filed suit for declaratory judgment within 3 months of adoption of the ordinance alleging that petitioner is in the business of operating adult bookstores and adult movie theaters. The complaint named the mayor and others as defendants. The ordinance was challenged as being unconstitutional on the grounds set out in the footnote.[3]

------

[3]"That the aforementioned ordinance is unconstitutional and illegal on the following grounds:

a) Said ordinance on its face is vague, indefinite and overbroad so as to violate the due process clauses of the Georgia and United States Constitutions and to invite discriminatory application, in violation of the equal protection clauses of said constitutions. Georgia Constitution, Art. 1, Sec. I, para. III (2 Ga. Code § 103), para. II (2 Ga. Code § 102), United States Constitution, Fifth and Fourteenth Amendments (1 Ga. Code §§ 805, 815), and further violates the First Amendment of the United States Constitution (1 Ga. Code 801-815), and The Georgia Constitution (Code 2-115, Constitution of 1945), Art I, Sec. I, para. 15, in denying the Plaintiff the right of expression and speech; all in violation of the due process clause and amounts to a prior restraint.

b) That section 4 through section 16 of said ordinance discriminates against adult bookstores and adult theatres by requiring the following: a substantial amount of financial information; no record for any conviction for five years, investigation by the Bureau of Police; with a fee of Five Hundred ($500) Dollars; a hearing must be had; the mayor in Section 7 has unbridled discretion to renew a permit; and all other requirements while other bookstores

Petitioner alleged that its president had a felony conviction and therefore petitioner and its president would be denied licenses under the ordinance. (The paragraph containing this allegation was denied by the defendants.)

Interventions were allowed on behalf of Gateway Books, Inc., and others engaged in operating adult bookstores and adult theaters, as well as Yield, Inc., d/b/a Harem Bathhouse, Cheshire Cat Bathhouse and Blue Fox Bathhouse, which alleged that it was engaged in operating adult entertainment establishments. See *Yield, Inc. v. City of Atlanta,* 241 Ga. 593 (1978). The intervenors asserted the same rights as had the original petitioner.

Neither the original petitioner nor any of the intervenors is engaged in the business of operating an "adult cabaret" as defined in the ordinance. In fact, the definition in the ordinance explains only the meaning of

---

and theatres do not have to comply with said ordinance, which makes said ordinance discriminatory and violates the equal protection clause; all in violation of the constitutional rights mentioned in subparagraph (a).

c) That the classification of adult theaters and bookstores for said licensing requirements amounts to a prior restraint and are in violation of the Constitutional rights set out in paragraph (a).

d) The ordinance lacks standards for the issuance of a license. In Section 4, subsection 12: 'and any further information that may be required,' is too vague, overbroad, and indefinite to be enforceable, and cannot be complied with; all in violation of the constitutional rights mentioned in subparagraph (a).

e) That the requirements set out in said ordinance such as no prior convictions, their bank accounts, financial statements, and other information, etc. is an impermissible distinction between 'adult oriented' and other bookstores, and there is no rational basis for said distinction; all in violation of the constitutional rights set out in subparagraph (a).

f) That the ordinance is an attempt to regulate materials which are a form of expression and fully

the word "adult," not the meaning of "cabaret." We understand that the word "cabaret" is used in its usual sense — a place where alcoholic beverages are sold for consumption on the premises. There being no attack upon the ordinance made on behalf of an adult cabaret, this opinion will not deal with those establishments. *Lott Invest. Corp. v. Gerbing,* 242 Ga. 90 (1978). By the same token, the full support of alcoholic beverage control cannot be applied here as alcoholic beverages are not involved in the adult bookstore, theater and entertainment establishment businesses. See California v. La Rue, 409 U. S. 109 (93 SC 390, 34 LE2d 342) (1972).

A hearing was held in the trial court at which a vice squad officer testified as to numerous arrests of bookstore customers for solicitation of sodomy, sodomy and public indecency occurring in the adult mini motion picture theaters (peep machines) located in the rear of four bookstores. No evidence was introduced as to adult entertainment establishments or adult motion picture theaters. The trial court upheld the validity of the ordinance, the complainants appealed to the Court of Appeals, and that court transferred the case here. *Collins v. State,* 239 Ga. 400 (3) (236 SE2d 759) (1977).

Yield, Inc., with its bathhouse operations, has failed to show that it is in the business of exercising First Amendment freedoms and consequently has failed to show any First Amendment violation. Hence the ordinance cannot be said to be unconstitutional on First Amendment grounds as to "adult entertainment establishments" as they are defined in the ordinance.

Appellants rely upon *Coleman v. Bradford,* 238 Ga. 505 (233 SE2d 764) (1977), and urge on appeal that "1) the ordinance is vague and indefinite and overbroad in its definitions, 2) operates as a prior restraint and is discriminating, 3) violates equal protection since other bookstores and theaters do not have to comply with the ordinance, 4) that the ordinance attempts to regulate materials which are protected by the First Amendment and therefore, the ordinance violates the First, Fifth and

---

protected by the First Amendment, and therefore is unconstitutional and is prior restraint."

Fourteenth Amendments of the United States Constitution."

*Coleman v. Bradford,* supra, is not applicable here. The Chatham County ordinance there imposed a license fee of $1,500 on theaters showing nonobscene, X-rated films. That was three times the $500 license fee charged other movie theaters. This court found that the ordinance in *Coleman* had as its purpose and effect the suppression of lawful speech (films). 238 Ga. at 507-509. That is not the purpose of the Atlanta ordinance as shown by this record. In fact, the license fees imposed by the city on other bookstores and theaters are not in evidence in this case. It has not been shown that the fee of $500 set by this ordinance is not a reasonable charge to cover the cost of investigating the license application and applicant.

Licensing of bookstores and movie theaters is not a per se violation of the First Amendment. See Times Film Corp. v. Chicago, 365 U. S. 43 (81 SC 391, 5 LE2d 403) (1961). A city may enact an ordinance, for legitimate purposes, requiring those who would exercise their freedom of speech to obtain a license in advance. Cox v. New Hampshire, 312 U. S. 569 (61 SC 762, 85 LE 1049) (1941). In Cox, the city required a license before a parade upon the public streets and charged a fee of up to $300 for issuance of the permit. The chilling gross receipts tax upon newspapers and magazines found invalid in Grosjean v. American Press Co., 297 U. S. 233 (56 SC 444, 80 LE 660) (1936), is not involved here. The court there emphasized that those businesses which exercise freedom of the press are not thereby immune from the ordinary forms of taxation. 297 U. S. at 250. Moreover, this fee, as heretofore noted, is not a revenue measure but is a reimbursement of the administrative expense of investigating the applicant.

Having determined that licensing of bookstores and theaters is not a per se impairment of freedom of speech and that the license fee here in issue has not been shown to be invalid, we turn to Young v. American Mini Theatres, 427 U. S. 50 (96 SC 2440, 49 LE2d 310) (1976). Young involved a Detroit zoning ordinance but we find that the principal differences between it and the Atlanta ordinance are in the licensing features dealt with above,

so that Young is now dispositive of several issues remaining in this case.

The Detroit ordinance in Young defined adult bookstores, adult motion picture theaters, and adult mini motion picture theaters in essentially the same terms as have been adopted by Atlanta.[4] The Young case involved only adult theaters but the court there held that a zoning ordinance regulating the location of "adult motion picture theaters" and treating them differently from other motion picture theaters, did not violate the First Amendment or the equal protection clause. The court held that even though a city could not suppress adult films, it could place them in a different classification from other films and regulate them. Thus, the City of Atlanta is not prohibited by freedom of speech or equal protection considerations from classifying adult bookstores, adult motion picture theaters, and adult entertainment establishments differently from other bookstores, theaters and places of entertainment, and thereafter regulating them.[5]

The court in Young dealt with another issue present here. There the theaters complained that the definition of "adult motion picture theater" was impermissibly vague in defining such theaters as presenting material "characterized by an emphasis" on sexual matter. The court found that the theaters in question recognized that they were within the definition and hence they were not left in doubt by the alleged vagueness. 427 U. S. at 58-59. Similarly, the bookstore complainants here have alleged that the ordinance is applicable to them. They thus will not be heard to complain that others may not have "a substantial or significant portion" of their stock in trade

---

[4]The definition of adult mini motion picture theaters in the Atlanta ordinance is more specific than in the Detroit ordinance in that the Atlanta ordinance expressly includes coin operated motion picture machines.

[5]To the extent that Young v. American Mini Theatres, supra, permits territorial regulation of adult movies and bookstores, *Sanders v. State of Ga.,* 231 Ga. 608 (II) (203 SE2d 153) (1974), will not be followed.

in sexual books and magazines. Moreover, it would appear that even if these complainants did not qualify as "adult bookstores," those which operate peep shows would be required to secure licenses as "adult mini motion picture theatres." "It is clear, therefore, that any element of vagueness in these ordinances has not affected these respondents. To the extent that their challenge is predicated on inadequate notice resulting in a denial of procedural due process under the Fourteenth Amendment, it must be rejected." Young, supra, 427 U. S. at 59.

Appellants cite Niemotko v. Maryland, 340 U. S. 268 (71 SC 325, 95 LE 267) (1951), and Interstate Circuit, Inc. v. Dallas, 390 U. S. 676 (88 SC 1298, 20 LE2d 225) (1968), for the proposition that a licensing ordinance applicable to a business engaged in activity protected by the First Amendment, which does not set forth the standards on which the license shall be denied, is unconstitutionally vague. The ordinance under consideration here is not devoid of the required standards. The cases of Perrine v. Municipal Ct. East L. A. Jud. Dist. 5 Cal. 3d 656 (97 CalRptr 320, 488 P2d 648 (1971) cert. den., 404 U. S. 1038 (1972); and Talk of the Town Bookstore v. City of Las Vegas, 553 P2d 959 (Nev. 1976), are thus not applicable here.

Appellants contend that the 5-year ban on persons convicted of crimes discriminates between adult bookstores and theaters on the one hand and regular bookstores and theaters on the other hand. The city interprets its ordinance to mean that in order for a person to be subject to the 5 year ban, the felony or misdemeanor must be one "relating to sexual offenses," or alcohol or drug offenses. That is, a felony or misdemeanor not related to a sexual offense, etc., would not be disqualifying. As thus interpreted, the disqualification is an exercise of the police power and is not otherwise unreasonable. Legislation which defines the qualifications for one who engages in an occupation or profession affecting the public health, safety, morals or welfare is a proper exercise of the police power. See Hawker v. New York, 170 U. S. 189, 192-193 (18 SC 573, 42 LE 1002) (1898). The city introduced evidence in

justification of the ban in connection with bookstores operating adult mini motion picture theaters. The legitimate purpose of the ban in conjunction with adult entertainment establishments would appear to be self-evident. We do not here decide the validity of the ban as to adult bookstores operated without peep shows because the only individual involved in this litigation who allegedly has a felony conviction has not shown the nature of that conviction and has not shown that he is engaged in operating a bookstore without a peep show. Miller v. Carter, 547 F2d 1314 (7th Cir. 1977), affirmed by an equally divided court, 434 U. S. 356 (98 SC 786, 54 LE2d 603) (1978), is inapposite here.

The reporting and disclosure requirements of the ordinance are the means of gathering the data necessary to investigate the applicant and detect violations of the ordinance; thus, they are not invalid. Buckley v. Valeo, 424 U. S. 1, 67-68 (96 SC 612, 46 LE2d 659) (1976). If the ordinance includes any unnecessary disclosure requirements, they have not been identified and urged here as such by appellants.

The ordinance does not prohibit the sale of any book, magazine or other printed matter. It does not prohibit any form of speech or expression. It licenses those who would offer certain types of sexual performances, movies and books which partake more of sexuality than of communication. See California v. LaRue, supra, 409 U. S. at 118. We do not find the ordinance invalid for any reason assigned.

*Judgment affirmed. All the Justices concur.*

ARGUED JULY 11, 1978 — DECIDED SEPTEMBER 6, 1978 — REHEARING DENIED SEPTEMBER 26, 1978.

*Glenn Zell, Robert Eugene Smith,* for appellants.
*Ferrin Y. Mathews, W. Roy Mays, III, Gary S. Walker,* for appellees.