JOHN GAESSLER, Appellant, v. SHERIFF, CARSON CITY, NEVADA, Respondent.

No. 11568

April 9, 1979                                        592 P.2d 955

---

*Chubb & Silverman,* Sparks, for Appellant.

*Richard H. Bryan,* Attorney General, Carson City; *David B. Small,* District Attorney, and *William A. Maddox,* Deputy District Attorney, Carson City, for Respondent.

## OPINION

*Per Curiam:*

At the conclusion of a preliminary examination, John Gaessler was ordered to stand trial for engaging in business or acting

without a license, a gross misdemeanor pursuant to NRS 645.230 and NRS 645.850. Gaessler subsequently petitioned the district court for a writ of habeas corpus, contending NRS 645.002, NRS 645.030, NRS 645.035 and NRS 645.230, as applied to his business activities, violate the due process and equal protection clauses of the Fourteenth Amendment of the United States Constitution and Art. I, § 8 of the Nevada Constitution.[1] Habeas was denied and Gaessler has appealed.

The evidence presented at the preliminary examination indicates that on October 5, 1978, Gaessler, who was not licensed in Nevada as either a real estate broker or broker-salesman, met with Gerald A. Wilcox, owner of the "Top Shop," a formica and cabinet business located in Carson City. Gaessler represented that he was employed by Huff & Sons, also known as Interstate Business Marketing, Inc. ("Interstate"), of Pueblo, Colorado, and offered to help Wilcox *sell* his business. Wilcox accepted Gaessler's offer and signed an instrument denominated "advertising agreement" which required Wilcox to pay

---

[1] NRS 645.002 provides:

"As used in this chapter, 'advance fee' means a fee contracted for, claimed, demanded, charged, received or collected for an advance fee listing, advertisement or offer to sell or lease property, issued for the purpose of promoting the sale or lease of business opportunities or real estate or for referral to business opportunity or real estate brokers or salesmen or both, prior to the last printing or other last issuance thereof, other than by a newspaper of general circulation."

NRS 645.030 provides, in pertinent part:

"1. Within the meaning of this chapter, a 'real estate broker' is any person, copartnership, association or corporation:

". . . .

"(b) Who engages in or offers to engage in the business of claiming, demanding, charging, receiving, collecting or contracting for the collection of an advance fee in connection with any employment undertaken to promote the sale or lease of business opportunities or real estate by advance fee listing advertising or other offerings to sell, lease, exchange or rent property."

NRS 645.035 provides, in pertinent part:

"1. Within the meaning of this chapter, a 'real estate broker-salesman' is any person who holds a real estate broker's license, or who has passed the real estate broker's examination pursuant to the provisions of NRS 645.475, but who, as an employee or as an independent contractor, for compensation or otherwise, is associated with a licensed real estate broker in the capacity of a salesman, to do or to deal in any act, acts or transactions included within the definition of a real estate broker in NRS 645.030."

NRS 645.230 provides, in pertinent part:

"1. After June 1, 1947, it shall be unlawful for any person, copartnership, association or corporation to engage in the business of, act in the capacity of, advertise or assume to act as, a real estate broker or real estate salesman within the State of Nevada without first obtaining a license as a real estate broker or real estate salesman from the real estate division as provided for in this chapter."

Interstate an "initial deposit" of $1,600.00.[2] Wilcox subsequently contacted the Nevada Real Estate Division regarding Gaessler's activities and, shortly thereafter, a complaint was issued.

1.   Gaessler first contends that in listing the business he was merely acting as an advertiser rather than as a real estate broker or salesman and, therefore, he was not required to obtain a license. We do not agree.

The recited conduct is more akin to that of a real estate broker. Gaessler's solicitation and receipt of an "advertising fee" for listing Wilcox's business for sale is the type of conduct which our real estate licensing statutes were designed to regulate and, therefore, Gaessler was required to have a real estate license.

2.   Gaessler next contends that NRS 645.002 violates the equal protection clause of the Constitution because it allows newspapers of general circulation to receive fees for listing offers to sell without requiring them to obtain a real estate license, but denies this same privilege to Interstate. Although the statute may discriminate in favor of newspapers of general circulation, such discrimination will not violate the equal protection clause if it bears a rational relation to the purpose of the legislation. Talk of the Town v. City of Las Vegas, 92 Nev. 466, 553 P.2d 959 (1976). Here, the legislature's manifest purpose was to permit newspapers, publications that merely accept advance fees for advertising space, to be exempt from the real estate licensing requirements.

However, where, as here, the advertiser not only accepts an advance fee for the listing, but also has a pecuniary interest in the sale of the property, the advertiser's activities are beyond the letter and purpose of the exemption and the licensing requirements may be imposed. Indeed, it is just such activities, with their "concomitant opportunities for abuse which the licensing laws are calculated to minimize." Whitaker v. Arizona Real Estate Board, 548 P.2d 841, 844 (Ariz.App. 1976). Accordingly, we conclude that the statutory licensing scheme is rationally related to a legitimate state interest and is not violative of equal protection guarantees.

---

[2]The agreement also provided that if the business were sold as a result of Interstate's services, the $1,600.00 deposit would be refunded to Wilcox and he would be required to pay Interstate $3,200.00. If the business were not sold, or alternatively, if it were sold to a person not solicited by Interstate, Wilcox would forfeit his $1,600.00 deposit.

Gaessler's final contention is that NRS 645.002, NRS 645.030, NRS 645.035 and NRS 645.230 violate the due process clause of the Constitution. This contention is without merit and is summarily rejected.

Affirmed.