S93A0448. GRAVELY et al. v. BACON et al.
(429 SE2d 663)

FLETCHER, Justice.

The owner of a nude dancing club challenges the constitutionality of a city ordinance prohibiting the sale of alcohol at an erotic dance establishment. We hold the provision in the Adult Entertainment Establishment Ordinance is narrowly drawn to promote the city's interest in combating the secondary effects of adult entertainment establishments. Because the ordinance does not violate either free speech or equal protection, we affirm the trial court's denial of a declaratory judgment and permanent injunction.

B. Don Gravely sought a license to sell alcoholic beverages at

---

Platinum Plus, a nude dancing establishment that he has operated in the City of Smyrna since 1991. See *Inner Visions, Ltd. v. City of Smyrna*, 260 Ga. 902 (400 SE2d 915) (1991). Max Bacon, the mayor of Smyrna, and the city council denied the license based on a city ordinance prohibiting erotic dance establishments from selling alcohol. Gravely filed an action in federal court seeking to enjoin enforcement of the Smyrna Adult Entertainment Establishment Ordinance. The district court denied Gravely's motion for a preliminary injunction on the grounds that he failed to establish a substantial likelihood of success on the merits. Gravely dismissed his federal complaint and filed an action in state court, seeking a declaratory judgment that the Smyrna ordinance is unconstitutional and an injunction prohibiting its enforcement. The trial court found the ordinance constitutional because it limits the liquor prohibition to an "erotic dance establishment" and denied the requested relief.

Gravely challenges provisions that prohibit the sale of alcoholic beverage at "erotic dance establishments" or where "professional belly dancers, strip dancing, exotic dancing, or any exhibitions of any like kind" are performed at "a restaurant, lounge, or private club." Smyrna Code Sec. 14-166 (g); Sec. 3-75.[1] An "erotic dance establishment" is defined as

a nightclub, theater, or other establishment which features live performances by topless and/or bottomless dancers, go-go dancers, strippers or similar entertainers, where such performances are distinguished or characterized by an emphasis on specified sexual activities or specified anatomical areas.

Sec. 14-165 (i). The ordinance lists seven "specified sexual activities"[2]

---

[1] Since the two challenged sections of the Smyrna Code are similar, they are considered together in this opinion.

[2] "Specified sexual activities means and shall include any of the following:

(1) Actual or simulated sexual intercourse, oral copulation, anal intercourse, oral anal copulation, bestiality, direct physical stimulation of unclothed genitals, flagellation or torture in the context of a sexual relationship, or the use of excretory functions in the context of a sexual relationship and any of the following sexually oriented acts or conduct: analingus (sic), buggery, coprophagy, coprophilia, cunnilingus, fellatio, necrophilia, pederasty, pedophilia, piquerism, sapphism, zooerasty;

(2) Clearly depicted human genitals in a state of sexual stimulation, arousal or tumescence; or

(3) Use of human or animal ejaculation, sodomy, oral copulation, coitus or masturbation; or

(4) Fondling or touching of nude human genitals, pubic region, buttocks or female breast; or

(5) Masochism, erotic or sexually oriented torture, beating or the infliction of pain; or

(6) Erotic or lewd touching, fondling or other sexual contact with an animal by a human being; or

and defines "specified anatomical areas" as "[l]ess than completely and opaquely covered human genitals or pubic region; buttock; or female breast below a point immediately above the top of the areola" or "[h]uman male genitalia in a discernibly turgid state, even if completely and opaquely covered." Id. (o). These definitions have been upheld repeatedly as not overbroad. See, e.g., *Young v. American Mini Theatres*, 427 U. S. 50, 53 (96 SC 2440, 49 LE2d 310) (1976).

1. Nude dancing is protected expression under the free speech clauses of both the United States and Georgia Constitutions. *Barnes v. Glen Theatre*, 501 U. S. ___ (111 SC 2456, 2468, 115 LE2d 504) (1991); *Pel Asso v. Joseph*, 262 Ga. 904 (427 SE2d 264) (1993). To determine whether a law regulating conduct such as nude dancing impermissibly infringes on protected expression, this court must consider whether (1) the act furthers an important government interest; (2) the government interest is unrelated to the suppression of speech; and (3) the incidental restriction of speech is no greater than is essential to further the government interest. See *Paramount Pictures Corp. v. Busbee*, 250 Ga. 252, 256 (297 SE2d 250) (1982).

> A carefully and narrowly drawn regulatory scheme which makes appropriate distinctions between public and private behavior and which impacts only those modes of expression which, in the experience of local governments, tend to be the focal points of negative effects such as increased crime, can pass constitutional muster notwithstanding some restriction of protected expression.

*Pel Asso*, 262 Ga. at 907.

Gravely does not dispute that the Smyrna ordinance furthers the important government interests in reducing criminal activity and protecting the deterioration of neighborhoods engendered by adult entertainment establishments. See *Intl. Eateries of America v. Broward County*, 941 F2d 1157, 1163 (11th Cir. 1991). He also does not deny that this interest in combating the secondary effects of adult entertainment establishments is unrelated to the suppression of speech. See *City of Renton v. Playtime Theatres*, 475 U. S. 41, 49 (106 SC 925, 89 LE2d 29) (1986). Gravely argues that the ordinance fails to meet the third prong of the *Paramount* test because the ordinance is not narrowly drawn to exclude mainstream entertainment, such as the opera "Salome," the play "Hair," or nude ballet.

2. This court has struck down as overbroad a state statute and local ordinances that were not narrowly drawn to further the govern-

---

(7) Human excretion, urination, menstruation, vaginal or anal irrigation."
Sec. 14-165 (n).

ment's interest in preventing the illegal activity associated with adult entertainment establishments offering nude dancing and alcohol. See *Pel Asso v. Joseph*, 262 Ga., supra; *Yarbrough v. City of Carrollton*, 262 Ga. 444 (421 SE2d 72) (1992); *Harris v. Entertainment Systems*, 259 Ga. 701 (386 SE2d 140) (1989). In *Harris*, we found that the statute was overbroad because it went

> beyond prohibiting nude dancing in bars. This [state] Act applies to a host of other establishments besides bars, [including] mainstream performance houses and museums, which need licenses to sell alcoholic beverages to their patrons for consumption on the premises.

259 Ga. at 703-704; accord *Yarbrough*, 262 Ga. at 445. The overbreadth flaw in the *Pel Asso* ordinance was its failure to limit the ban on partial nude dancing to public places that cause the undesirable secondary effects. See 262 Ga. at 904.

The rules of statutory construction require this court to construe a statute as valid when possible. See *City of Hapeville v. Anderson*, 246 Ga. 786, 787 (272 SE2d 713) (1980). A "statute should not be deemed facially invalid unless it is not readily subject to a narrowing construction." *Erznoznik v. City of Jacksonville*, 422 U. S. 205, 216 (95 SC 2268, 45 LE2d 125) (1975); see *State v. Miller*, 260 Ga. 669, 674 (398 SE2d 547) (1990). Construing the definition of "erotic dance establishments" in conjunction with the ordinance's purpose,[3] we interpret the challenged provision as limited to adult dance entertainment businesses that studies have shown produce undesirable secondary effects.[4] The ordinance applies to "topless or bottomless dancers, go-go dancers, strippers or similar entertainers" whose public performance conveys an erotic message distinguished by an emphasis on sexual activities or anatomical areas. Cf. *Airport Book Store v. Jackson*, 242 Ga. 214, 223 (248 SE2d 623) (1978) (upholding ordinance

---

[3] "The purpose of this article is to regulate certain types of businesses, including, but not limited to, adult entertainment establishments, to the end that the many types of criminal activities frequently engendered by such businesses will be curtailed." Sec. 14-164.

[4] The U. S. Supreme Court has held that a city may rely on the experiences of other cities in enacting an adult theater zoning ordinance.

> The First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses.

*City of Renton*, 475 U. S. at 51. In *Barnes*, Justice Souter stated that adult dance establishments are the same type of entertainment as adult movie theatres and therefore "likely to produce the same pernicious secondary effects as the adult films displaying 'specified anatomical areas' at issue in *Renton*." 111 SC at 2469-2470 (Souter, J., concurring). Under these two decisions, cities may rely on studies conducted by other cities in enacting ordinances regulating adult entertainment establishments.

regulating adult establishments where performances "partake more of sexuality than of communication"), cert. denied, 441 U. S. 952 (1979).

This narrowing construction means the ordinance does not prohibit the live performance of plays, operas, or ballets at theatres, concert halls, museums, educational institutions, or similar establishments. These establishments have not been shown to contribute to increased crime and neighborhood blight, and the performances do not communicate an erotic message with an emphasis on specified sexual activities or anatomical areas. Nor does the ordinance extend to private conduct or public entertainment that does not involve live performances, such as television shows, motion pictures, or museums, in contrast to the ordinance invalidated in *Pel Asso* and the statute struck down in *Harris.*

As interpreted, the Smyrna ordinance's incidental restriction on the protected expression of nude dancing at adult dance establishments is no greater than is essential to protect the government's interest in preventing unwanted secondary effects. Therefore, it does not restrict protected expression in violation of the federal or state free speech clauses.[5]

3. The ordinance also does not violate equal protection. Even applying a heightened level of scrutiny because the fundamental right of free expression is involved, a city may classify and regulate adult entertainment establishments differently from other places of entertainment. See *Airport Book Store*, 242 Ga. at 221.

*Judgment affirmed. All the Justices concur, except Hunt, P. J., and Carley, J., who concur in the judgment only, and Sears-Collins, J., who dissents.*

HUNT, Presiding Justice, concurring.

I concur in the judgment only because Gravely did not challenge the constitutionality of the Smyrna ordinance under the first two prongs of the three-prong test of *Paramount Pictures Corp. v. Busbee,* 250 Ga. 252, 256 (297 SE2d 250) (1982); that is, he did not contend the ordinance does not further the legitimate government interest in reducing criminal activity and protecting the deterioration of neighborhoods engendered by adult entertainment establishments, and he did not contend that government interest is unrelated to the

---

[5] See *Airport Book Store v. Jackson*, 242 Ga. at 223 (upholding adult entertainment ordinance that required licensing of sex-related businesses but did not prohibit any form of speech or expression); *7250 Corp. v. Bd. of County Commrs.*, 799 P2d 917 (Colo. 1990) (upholding ordinance imposing restrictions on nude dancing establishments that are not licensed to sell alcoholic beverages); cf. *California v. LaRue*, 409 U. S. 109, 118 (93 SC 390, 34 LE2d 342) (1972) (upholding statute in which state did not forbid lewd or naked dancing but "merely proscribed such performances in establishments that it licenses to sell liquor by the drink").

suppression of speech. Rather, his only challenge to the Smyrna ordinance was that it was overbroad. I agree with the majority that the ordinance, as construed, is sufficiently narrowly drawn to meet the third prong of the *Paramount* test, that is, the restriction of protected speech is no greater than is essential to the furtherance of the government interest.

Moreover, I write separately to clarify Section 1 (b) of our opinion in *Harris v. Entertainment Systems*, 259 Ga. 701, 702 (386 SE2d 140) (1989) and to reiterate that notwithstanding the very broad powers accorded the states under the Twenty-First Amendment to regulate the sale of alcohol, in analyzing statutory restrictions on nude dancing in establishments where alcohol is sold we will apply the three-prong test of *Paramount Pictures Corp. v. Busbee.*

In *California v. LaRue*, 409 U. S. 109 (93 SC 390, 34 LE2d 342) (1972) and *New York State Liquor Auth. v. Bellanca*, 452 U. S. 714 (101 SC 2599, 69 LE2d 357) (1981), the United States Supreme Court, citing the broad powers accorded the states under the Twenty-First Amendment to regulate the sale of alcohol (powers "conferring something more than the normal state authority over public health, welfare, and morals" 409 U. S. at 114, 93 SC at 395) upheld state statutes prohibiting certain forms of nude dancing in establishments selling alcohol. In light of these cases, the state in *Harris* naturally argued that the statute in question was a proper exercise of the state's power accorded by the Twenty-First Amendment to regulate the sale of alcohol. In rejecting that argument, we analyze the validity of the statute under the First Amendment of our state constitution. Thus, while the Twenty-First Amendment might allow broader infringement on federal First Amendment rights where the sale of alcohol is involved, any restriction of nude dancing under our state First Amendment is governed by the *Paramount* test, regardless of the sale of alcohol in the premises.

SEARS-COLLINS, Justice, dissenting.

I dissent, not because I am a nude dancing enthusiast, I am not, but because I strongly believe that the rights protected by the First Amendment to the United States Constitution are essential to freedom and democracy, and that those rights have been tread upon in this case without good cause having been shown.

Neither the majority nor the appellee disputes that nude dancing is deemed a form of expression protected by the First Amendment, (majority p. 205). Also, this court has held that prohibiting the sale of alcohol at establishments which offer nude dancing "infringes upon protected expression." *Harris v. Entertainment Systems,* 259 Ga. 701, 703 (386 SE2d 140) (1989).

In upholding the prohibition against the sale of alcohol at an es-

tablishment offering nude dancing in this case, the majority uses the test applicable to content-neutral legislation, which is set forth in *Paramount Pictures v. Busbee*, 250 Ga. 252, 256 (297 SE2d 250) (1982) (majority p. 205). The majority holds that the ordinance is justified when limited to the establishments specified in Smyrna Code section 14-165 (i), which, according to the majority, "studies have shown produce undesirable secondary effects" (majority p. 206). However, nowhere in the majority opinion, the appellee's brief, the appellee's affidavit, or the record is it made clear just what "studies" are being relied upon, what the results of those "studies" were, where those "studies" were conducted, or why the results of those "studies" should reasonably be expected to apply to the specific situation being addressed by the city of Smyrna. "We should not investigate facts by the light of arguments, but arguments by the light of facts." Myson, of Chen, one of the Seven Sages, c. 600 B.C.

I recognize that this Court has in the past assumed the viability of the governmental interest allegedly sought to be protected. See, e.g., *Harris*, 259 Ga. at 703. However, I believe that such deference without inspection can be dangerous, particularly when addressing suppressed expression. It seems to me that for a restriction on the sale of alcohol at adult entertainment establishments to survive First Amendment scrutiny based on an interest in preventing "undesirable secondary effects," some very specific causal nexus must be established between the undesired effects and the combination of nude dancing and alcohol. Such a causal nexus simply has not been proved in this case. The majority's reliance for this nexus on unnamed, unexplained and unrelated "studies" just does not seem appropriate when the right being infringed has First Amendment protection. Furthermore, while the majority states that unspecified "studies" have shown that some adult entertainment establishments have been shown to produce undesirable secondary effects, the majority does not even purport to rely on studies which have connected any undesirable effects with the *combination* of nude dancing and alcohol.

With no findings required as to the applicability of studies or experience by other cities to the situation being addressed, *any* community could rely on "studies" to enact a similar ordinance. I do not believe that unidentified "studies" constitute sufficient justification for diminishing rights protected by the First Amendment,[6] or that that was the intention of the United States Supreme Court in *City of Renton v. Playtime Theatres*, 475 U. S. 41 (106 SC 925, 89 LE2d 29) (1986), cited by the majority as authority for relying on "studies,"

---

[6] Nor do I agree, based upon a review of the record and the appellant's brief, that the appellant concedes the existence of the purported secondary effects.

(majority at p. 206, n. 4). Even the city of Renton's ordinance (which did not relate to the combination of alcohol and adult entertainment) was based on specific studies done by a specific city in the same area. See *City of Renton v. Playtime Theatres*, 475 U. S. 41, 50-52.

Moreover, I believe that the failure of the city of Smyrna to produce anything more than conclusory, speculative and preconceived presumptions regarding the "secondary effects" of adult entertainment establishments at which alcohol is served strongly suggests that the city's motive for regulating the establishments is in reality based upon a dislike for the subject matter of the expression. As a content-based regulation, section 14-166 (g) would not be subject to the *Paramount Pictures* balancing test applied by the majority. Rather, where protected expression is restricted precisely because of the content of that expression, the restriction is subject to much more stringent examination. See *Barnes v. Glen Theatre* 501 U. S. ___ (111 SC 2456, 2466, 115 LE2d 504) (1991); *City of Renton v. Playtime Theatres*, 475 U. S. at 58 (Brennan, J., dissenting). As stated above, however, even under the less stringent test applied by the majority, there is insufficient proof in this case to justify the restriction on First Amendment protected expression.

DECIDED MAY 20, 1993 —
RECONSIDERATION DENIED JUNE 18, 1993.

*Steven M. Youngelson, David L. Miller, Franklin H. Thornton,* for appellants.

*Cochran, Camp & Snipes, Scott A. Cochran, D. Michael Williams,* for appellees.