**BROADWAY BOOKS, INC., a Tennessee corporation, Dexter Eugene Franklin, d/b/a Peepers Adult Bookstore and David Boles, d/b/a Cinema One Adult Bookstore and Theatre, Plaintiffs,**

v.

**Gene ROBERTS, as Mayor for the City of Chattanooga, John P. Franklin, Paul F. Clark, James C. Eberle, Tom Kennedy, as Members of the Board of Commissioners of the City of Chattanooga, Eugene N. Collins, as City Attorney for the City of Chattanooga, and the City of Chattanooga, Defendants.**

No. CIV 1–86–194.

United States District Court, E.D. Tennessee, S.D.

June 11, 1986.

As Amended June 12, 1986.

David Haines Rotroff, Chattanooga, Tenn., Charles W. Boyle, Atlanta, Ga., for plaintiffs.

Randall L. Nelson, W. Lee Maddux, Phillip A. Noblett, Chattanooga, Tenn., for defendants.

## MEMORANDUM

EDGAR, District Judge.

This is an action brought by the owners of three adult bookstores in Chattanooga,

Tennessee for a declaratory judgment that the recently enacted City of Chattanooga Ordinance 8601 is unconstitutional, in whole or in part, and for injunctive relief. This case has been fully heard on the merits and is now ready for disposition.

Ordinance 8601 establishes a licensing procedure for "adult-oriented establishments" which are defined to include "adult bookstores", "adult motion picture theaters", "adult mini-motion picture theaters" and "adult cabarets."

The plaintiffs in this case are three of approximately eleven adult-oriented establishments in the Chattanooga area which provide closed booths for patrons to watch coin-operated video machines depicting erotic sexually explicit activity. The ordinance requires licenses for operating these adult-oriented establishments. There is no question that the plaintiffs in this suit fall within the confines of this ordinance and would require a license to continue to operate. The ordinance also requires that any "entertainer" in these establishments obtain a permit.[1]

License applicants must furnish specified information to the City Treasurer to obtain a license. This disclosure must also be made by partners of partnership applicants, and by officers, directors and the owners of more than five percent (5%) of the stock of corporate applicants.

In order to receive a license to operate an adult-oriented establishment, an applicant must meet the following standards which are specified in section 7 of the ordinance:

1. If the applicant is an individual:

(i) The applicant shall be at least eighteen (18) years of age and a person of good moral character and reputation in the community in which he or she resides.

(ii) The applicant shall not have been convicted of or pleaded nolo contendere to a felony or any crime involving moral turpitude, prostitution, obscenity or other crime of a sexual nature in any jurisdiction within five (5) years immediately preceding the date of the application.

(iii) The applicant shall have been a resident of the City of Chattanooga or its environs continuously for thirty (30) days immediately preceding the date of the application.

(iv) The applicant shall not have been found to have previously violated this ordinance within five (5) years immediately preceding the date of the application.

Similar issuance standards apply to officers, directors and stockholders of corporations where the applicant is a corporation and to partners in joint venturers when the applicant takes those business forms.

The ordinance requires a payment of a $500 fee to be submitted with the application for an operator's license. One-half of the fee is returned if the application is denied. The licenses are to be renewed upon application annually.

A key provision of the ordinance is specifically directed at the booths which are contained within these establishments. The ordinance provides in section 14(g) that:

Every adult-oriented establishment shall be physically arranged in such a manner that the entire interior portion of the booths, cubicles, rooms or stalls, wherein the adult entertainment is provided, shall be visible from the common area of the premises. Visibility shall not be blocked or obscured by doors, curtains, partitions, drapes, or any other obstruction whatsoever. It shall be unlawful to install booths, cubicles, rooms or stalls within adult-oriented establishments for whatever purpose, but especially for the purpose of secluded viewing of adult-oriented motion pictures or other types of adult entertainment.

The ordinance contains several other provisions which will be discussed below. The

---

1. There is evidence that the "Fox" (not a plaintiff in this action), one of the Chattanooga adult-oriented establishments, provides live entertainment in the form of a dancing girl behind a clear plexiglass screen.

entire ordinance is attached as Appendix A to this memorandum opinion.

 Ordinance 8601 as a whole regulates the time, place and manner of expression. While its implementation may have some impact upon constitutionally protected first amendment activity, the Court finds that it was not enacted for the purpose of limiting speech on the basis of its content. The ordinance is not directed at future expression by businesses. *See City of Paducah v. Investment Entertainment, Inc.*, 791 F.2d 463 (6th Cir.1986). Furthermore, the City is not prevented by the first amendment nor by the fourteenth amendment's equal protection clause from classifying and regulating adult-oriented establishments differently from other places of entertainment. *Young v. American Mini Theaters, Inc.*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976), *City of Minot v. Central Ave. News*, 308 N.W.2d 851 (N.D.

1981); *Airport Book Store, Inc. v. Jackson*, 242 Ga. 214, 248 S.E.2d 623 (1978). Therefore, Ordinance 8601 is not presumptively invalid under the first amendment. *Renton v. Playtime Theaters, Inc.*, — U.S. ——, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986); *Young v. American Mini Theaters, Inc.*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976); *Hart Book Stores, Inc. v. Edmisten*, 612 F.2d 821 (4th Cir.1979).[2]

This ordinance is constitutional if it is designed to serve a substantial governmental interest and does not limit alternative avenues of communication. *Renton*, — U.S. at ——, 106 S.Ct. at 928, 89 L.Ed.2d at 37. An even more precise formula for testing the constitutional validity of this ordinance has been provided by the Supreme Court in *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), which held that this genre of regulation is sufficiently justified:

**2.** Plaintiffs launch a broad attack against Ordinance 8601 on several grounds. This includes a claim that it is an unconstitutional prior restraint of speech, unconstitutionally vague and overbroad.

However, this ordinance merely regulates the time, place and manner of the exercise of first amendment rights and sets forth narrow, objective and definite standards to guide the licensing authority in issuing the license. It does not, therefore, constitute an unlawful prior restraint. *See Young v. American Mini Theaters, Inc.*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976); *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969).

Regarding plaintiffs' overbreadth and vagueness arguments, a law is overbroad if it does not aim specifically at evils within the allowable area of control but sweeps within its ambit activities that constitute an exercise of first amendment rights. *Beckerman v. City of Tupelo, Mississippi*, 664 F.2d 502, 507 (5th Cir.1981) *citing Thornhill v. Alabama*, 310 U.S. 88, 97, 60 S.Ct. 736, 84 L.Ed. 1093 (1940). However, a law will not be voided on these grounds unless its overbreadth is substantial in relation to the statute's plainly legitimate sweep. *Broadrick v. Oklahoma*, 413 U.S. 601, 605, 93 S.Ct. 2908, 37 L.Ed. 830 (1973). Because, as discussed later in this memorandum, this Court finds that the ordinance is precisely aimed at matters which are within the power of the City to regulate, the Court cannot say that the ordinance is overbroad in any way. Rather, the ordinance achieves its ends without preventing the free flow of ideas protected by the first amendment. Thus, the statute is not invalid on overbreadth grounds.

The void-for-vagueness doctrine holds that an enactment will be void for vagueness if its prohibitions are not clearly defined. *Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972). The doctrine incorporates the notions of fair notice or warning. *Smith v. Goguen*, 415 U.S. 566, 572, 94 S.Ct. 1242, 1246, 39 L.Ed.2d 605 (1974). It requires legislative bodies to set reasonably clear guidelines for law enforcement officials and triers of fact in order to prevent arbitrary and discriminatory enforcement. *Id.* Thus, a statute or ordinance must contain narrow, objective and definite standards to guide those who exercise the authority to restrict protected constitutional rights. *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969). The standards must be susceptible to objective measurement; and the terms of the regulation should be precisely defined. *See Keyishian v. Board of Regents*, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); *NAACP v. Button*, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963).

As stated above, the ordinance under consideration meets all of these requirements. It sets out clearly and precisely the procedures that must be followed to apply for the license and the standards guiding issuance of the license. It cannot be said that the ordinance as a whole does not provide fair warning or impermissibly delegates basic policy matters to administrative officials for resolution on an *ad hoc* or subjective basis. *See Grayned v. City of Rockford*, 408 U.S. 104, 108–109, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972). Thus, the Court finds that the ordinance is not unconstitutionally vague.

... if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged first amendment freedoms is no greater than is essential to the furtherance of that interest.

391 U.S. at 377, 88 S.Ct. at 1679. With the exceptions noted below, this Court finds that Ordinance 8601 meets these requirements in every respect.

These adult-oriented establishments are a substantial law enforcement problem for the Chattanooga Police Department—and particularly for its vice squad. Since 1982, Chattanooga police officers have arrested numerous people at these establishments for sex-related crimes such as prostitution, selling obscene material to juveniles, indecent exposure, assignation, and solicitation to commit an unnatural sex act. There have been 112 such arrests since 1982. These are in addition to numerous arrests at these establishments on other charges such as gambling, assault and battery, and public drunkenness. Some of the arrests have been of employees at these establishments, including the plaintiff establishments. On numerous occasions, plain-clothes police officers and others at these places have been grabbed by the genitals or otherwise solicited for homosexual activity.

In addition, these establishments, particularly the closed booths, have been found to be filthy. Police officers and others have found semen and blood on the walls, floors and video screens; dirty Kleenex stuck to the walls; condoms on the floors; and defecation and urine on the floors. These booths frequently contain "glory holes" or holes cut or smashed out between the booths to permit inter-booth sexual activity. Officers have observed more than one person enter one of these booths and have observed people masturbating therein. The Chattanooga City Commission, with the above information, enacted Ordinary 8601.

The Commission made specific findings in the ordinance regarding the problems encountered as a result of these unregulated adult-oriented establishments. (See the preamble and section 1 of the ordinance.) One of the Commission's paramount concerns was the health hazard created by these establishments and the increased incidence of Acquired Immune Deficiency Syndrome (AIDS) which have been reported in the Chattanooga area. Dr. Katherine Hankins of the Hamilton County Health Department testified that exposure to the blood and semen in these booths could transmit the HTLV–III virus that carries AIDS, not to mention the exposure which could be generated by sex acts conducted through the "glory holes."

The City of Chattanooga in enacting Ordinance 8601 was not required to find by a judicially allocated burden of proof that the ordinance was necessary to achieve the desired results. The Fourth Circuit recently said in *Wall Distributors, Inc. v. City of Newport News, Va.*, 782 F.2d 1165, 1169 (4th Cir.1986), that:

Judicial review goes only to whether the legislative determination of justification and fitness is not facially without factual support, hence not arbitrary and capricious.

To establish a substantial governmental interest, it is necessary only that the City here demonstrate that the evidence which it relied upon "is reasonably believed to be relevant to the problem that the city addresses." *Renton*, —— U.S. at ——, 106 S.Ct. at 930, 89 L.Ed.2d at 40. The Court finds that the City of Chattanooga in enacting Ordinance 8601 acted properly upon such reasonable belief. There is here a rational relationship between the ordinance and the hazard which it is designed to alleviate. *CLR Corp. v. Henline*, 702 F.2d 637 (6th Cir.1983). Moreover, the Court finds that the City has established that as a whole, the provisions of Ordinance 8601 are necessary to alleviate that hazard. *Keego Harbor Co. v. City of Keego Harbor*, 657 F.2d 94 (6th Cir.1981). The Court finds that the City of Chattanooga in enacting

the ordinance, acted constitutionally within its police power, and in furtherance of a substantial governmental interest unrelated to the suppression of free expression. Thus, the first three prongs of the *O'Brien* test are satisfied.

Plaintiffs contend, however, that the fourth prong of the *O'Brien* test is not met because in certain particular respects the method by which the City has elected to accomplish its stated goals is greater than is essential to accomplish the furtherance of the governmental interest. This contention is discussed below in relation to the specific provisions of the ordinance challenged by plaintiffs.

*The Open Booth Requirement*

The plaintiffs particularly object to the ordinance's above quoted requirement that the booths must be visible from the common area of the premises. What the ordinance simply provides is that the doors, curtains or any other obstruction be removed from the booths so that activity within these booths can be observed by inspecting police officers or health officials.

■ The plaintiffs contend on behalf of their customers that the customers have a privacy right included within the "penumbra" of rights secured by the first amendment to watch these videos in seclusion. *See Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). This contention is without merit. First, it is unclear whether the owner of a theater has standing to assert the constitutional rights of patrons. *Ellwest Stereo Theaters, Inc. v. Wenner*, 681 F.2d 1243, 1247 (9th Cir. 1982). Second, to accede to plaintiffs' argument would be tantamount to finding that the patrons have some kind of right to masturbate themselves and others in the seclusion of these booths. This is not a "right" which is protected by the first amendment. While one may be entitled to engage in this activity in the privacy of one's home, there is no such entitlement to do so in a public place. As the Ninth Circuit recently stated in *Ellwest Stereo Theatres, Inc. v. Wenner:*

We decline to hold that the "right" to unobserved masturbation in a public theater is "fundamental" or "implicit in the concept of ordered liberty."

681 F.2d at 1248.

■ The open booth requirement of Ordinance 8601 is therefore valid. It is a restriction which is no greater than is essential to the furtherance of a substantial governmental interest and fully meets the *O'Brien* test. Similar open booth requirements have recently been upheld by the Fourth Circuit in *Wall Distributors, Inc. v. City of Newport News, Va.*, 782 F.2d 1165 (4th Cir.1986); the Ninth Circuit in *Ellwest Stereo Theatres, Inc. v. Wenner*, 681 F.2d 1243 (9th Cir.1982); and by the Supreme Court of Kansas in *Moody v. Board of County Commissioners*, 237 Kan. 67, 697 P.2d 1310 (1985).

*Other Provisions of the Ordinance*

A. *Disclosure of Applicants' Names and Criminal Records*

Plaintiffs contend that the provisions of Ordinance 8601 which require that applicants provide their names and all aliases as well as their prior convictions on all offenses except minor traffic violations is a violation of the plaintiffs' first amendment, as well as their fifth amendment, rights.

■ It goes without saying that an application without a name would be meaningless. The record shows that police have found the adult-oriented establishment operators to be using aliases. The City is certainly entitled to know who is operating these establishments. The City provided ample proof that these adult-oriented establishments are repositories of various varieties of crime in addition to sex-related crime, and that the operators of these establishments are themselves sometimes engaged in this crime. It is a proper exercise of the police power to define the qualifications for one who engages in an occupation affecting the public health, safety, morals or welfare. *Airport Book Store, Inc. v. Jackson*, 242 Ga. 214, 248 S.E.2d 623, 628 (1978). The City's legitimate goal of crime

prevention makes it clear that it has a substantial governmental interest in insuring that the persons who operate these establishments also do not have criminal records. *See Iacobucci v. City of Newport,* 785 F.2d 1354, 1357 (6th Cir.1986) (ordinance requiring employees of establishments serving liquor to register with police department, be fingerprinted, and photographed). There has been no showing that these requirements would chill plaintiff's first amendment rights. *Bayside Enterprises, Inc. v. Carson,* 470 F.Supp. 1140, 1147 (M.D.Fla.1979).

Nor do these disclosure requirements infringe on plaintiffs' fifth amendment rights. Before there can be a fifth amendment violation, it must appear that the threat of prosecution is real, appreciable and not imaginary. It must be shown that there is a causal link between the disclosure and probable prosecution. *California v. Byers,* 402 U.S. 424, 91 S.Ct. 1535, 29 L.Ed.2d 9 (1971). No such link is present here. *See State v. Huddleston,* 412 A.2d 1148 (1980).

## B. *License Fee Requirement*

■ Plaintiffs contend that the $500 annual license fee excessively burdens their first amendment rights. The Court rejects this contention. The City has amply demonstrated through the testimony of Assistant Chief Dinsmore that it would cost the City $500 to process each application for a license and to enforce the ordinance for one year for each establishment. Such a license fee is not unconstitutional so long as it is imposed as a regulatory measure to defray the cost of investigating the license applicant. *Murdock v. Commonwealth of Pennsylvania,* 319 U.S. 105, 114, 63 S.Ct. 870, 875, 87 L.Ed. 1292 (1943); *Airport Book Store, Inc.,* 242 Ga. 214, 248 S.E.2d 623, 627 (1978) (approving a $500 license fee in a similar ordinance). Since the enforcement will be related directly to maintaining the sanitary conditions of these establishments and to law enforcement rather than to anything related to the suppression of speech, the Court finds that portion

of the fee attributable to enforcement to be justified. The fee as a whole is as minimal as necessary to meet the costs of the City. *Bayside Enterprises, Inc.,* 470 F.Supp. at 1149. Under these circumstances, this part of the ordinance is constitutionally valid.

## C. *Hours of Operation Requirement*

■ Plaintiffs contend that the City has no rational purpose for the ordinance's "hours of operation" requirement and that requiring these establishments to be closed in the wee hours of the morning and until noon on Sundays is a violation of equal protection. The City prescribes hours of operation for pool halls, movie theaters, pawnbrokers, beer sellers, massage parlors, and numerous other endeavors. The hours of operation requirement furthers a legitimate law enforcement purpose and does not discriminate in any way against adult-oriented establishments. Certainly it cannot be said that the required closure of these places for a few hours is any impingement on first amendment rights. *Star Satellite, Inc. v. City of Biloxi,* 779 F.2d 1074 (5th Cir.1986). Thus, the Court rejects plaintiffs' arguments on this issue and holds that this section does not violate any of plaintiffs' constitutional rights.

## D. *Advance Collection Provision*

Section 14(i) provides that:

No operator, entertainer, or employee of an adult-oriented establishment shall demand or collect all or any portion of a fee for entertainment before its completion.

■ At the hearing, it was established that this provision was directed solely at the charging of fees for live entertainment. While the wording of this provision is not very clear in this regard, the Court will construe this provision narrowly to apply only to live entertainment. Police Lieutenant Roy Glenn testified that the purpose of this provision was to protect patrons from being defrauded by the live dancers who sometimes terminate their dancing in midstream unless patrons stuff more money through the plexiglass screen.

While the requirement of standing is somewhat relaxed in a first amendment setting, *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), a plaintiff must still have a direct stake in the outcome before there can be an article III "case or controversy." *Genusa v. City of Peoria*, 619 F.2d 1203, 1210 (7th Cir. 1980). In this case, none of the plaintiffs provide live entertainment at their establishments. Therefore, it is clear that they lack standing to attack this particular provision of the ordinance. The Court therefore declines to reach the question of the constitutionality of this provision of the ordinance.

### E. *Respondeat Superior*

Sections 14(c) and (d) of the ordinance provide:

(c) Every act or omission by an employee constituting a violation of the provisions of this ordinance shall be deemed the act or omission of the operator if such act or omission occurs either with the authorization, knowledge or approval of the operator, or as a result of the operator's negligent failure to supervise the employee's conduct, and the operator shall be punishable for such act or omission in the same manner as if the operator committed the act or caused the omission.

(d) An operator shall be responsible for the conduct of all employees while on the licensed premises and any act or omission of any employee constituting a violation of the provisions of this Ordinance shall be deemed the act or omission of the operator for purposes of determining whether the operator's license shall be revoked, suspended or renewed.

■ Plaintiffs object to these paragraphs as unreasonably hindering their first amendment rights. These provisions do not penalize a licensee for activity over which the license has no control. *Chulchian v. City of Indianapolis*, 633 F.2d 27, 32 (7th Cir.1980). They are, therefore, valid under the *O'Brien* test.

### F. *Residence Requirement*

■ Before a license can be issued to an operator, the ordinance requires that the applicant must have been a resident of the City of Chattanooga or its environs for 30 days before the date of the application. Durational residence requirements must be measured by a strict equal protection test and are unconstitutional unless the governing authority can demonstrate a compelling governmental interest. *Dunn v. Blumstein*, 405 U.S. 330, 342, 92 S.Ct. 995, 1003, 31 L.Ed.2d 274 (1972). The governmental interest must be all the more compelling where first amendment rights are involved. *Troyer v. Town of Babylon*, 483 F.Supp. 1135 (E.D.N.Y.1980).

■ The City has not demonstrated a compelling governmental interest which would justify the 30–day residence requirement in Ordinance 3601. Mindful of the admonition of *Leviticus* 24:22 (King James) that, "Ye shall have one manner of law, as well as for the stranger, as for one of your own country," this Court finds that this portion of the ordinance is a violation of equal protection.

### G. *"Good Moral Character" Requirement*

Section 4(b)(15) requires that a licensed applicant supply:

Written statements of at least five (5) persons who are not related to the applicant that the applicant is of good moral character.

The ordinance further provides that a license may not be issued unless the applicant (or persons associated with corporations or partnership license applicants) is of "good moral character and reputation in the community."

■ These provisions would permit a prior restraint on first amendment rights through the application of an amorphous standard requiring the licensing authority to exercise unguided subjective judgment.

*Genusa v. City of Peoria,* 619 F.2d 1203, 1217 (7th Cir.1980). The effect is to allow the City to deny a license to whomever it wishes on the basis of a criterion which is too imprecise to be reviewed. *Bayside Enterprises, Inc. v. Carson,* 450 F.Supp. 696, 707 (M.D.Fla.1978). "Good character" provisions have been upheld in other contexts, *see Schware v. Board of Bar Examiners,* 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957), but not where they are used as a basis for licensing or permitting first amendment activities. *See Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969). It may be true, as the City points out, that the ordinance is directed mainly at the physical arrangement of the booths. Nevertheless the licensing provisions extend as well to activities such as selling books and showing videos. While, in the words of Justice Stevens in *Young,* 427 U.S. at 72, 96 S.Ct. at 2453, "few of us would march our sons and daughters off to war to preserve the citizen's right to see 'Specified Sexual Activities' exhibited in the theaters of our choice," such material, not in this case having been shown to be obscene, is therefore entitled to a modicum of first amendment protection.

### Conclusion

Chattanooga's Ordinance 8601 meets the *O'Brien* test and is therefore constitutional except for the residence and good moral character requirements which are contained in section 4(15); section 7(a)(1)(i); section 7(a)(1)(iii); section 7(a)(2)(i); section 7(a)(2)(iii); section 7(a)(3)(i); and 7(a)(3)(iii).[3] These provisions of the ordinance are found to be unconstitutional. Since the ordinance contains a severability clause, the remainder of the ordinance is found to be constitutional. An appropriate order will enter.

---

**3.** The ordinance is typographically misnumbered. The above cited sections are intended to refer to those portions of the ordinance dealing with licensing of operators. Other sections of the ordinance also partly contained in a "Section 7" refer to permitting of entertainers and also contain residency and good moral charac-

### JUDGMENT

After a full hearing on the issues in this case and in accordance with the memorandum opinion filed herewith, this Court enters, pursuant to the provisions of 28 U.S.C. §§ 2201 and 2202, a judgment declaring that City of Chattanooga Ordinance 8601 is constitutional except for the following provisions which deal with good moral character and residency requirements of the licensees: section 4(15); section 7(a)(1)(i); section 7(a)(1)(iii); section 7(a)(2)(i); section 7(a)(2)(iii); and section 7(a)(3)(i); and section 7(a)(3)(iii).

The defendants are hereby PERMANENTLY ENJOINED from enforcing the above specific provisions of the ordinance.

The plaintiffs' request for all other injunctive relief is hereby DENIED.

SO ORDERED.

### APPENDIX A

### ORDINANCE NO. <u>8601</u>

AN ORDINANCE TO AMEND CHATTANOOGA CITY CODE, PART II, RELATIVE TO ADULT-ORIENTED ESTABLISHMENTS.

---

WHEREAS, it is a lawful purpose of the Board of Commissioners to enact regulatory ordinances protecting and promoting the general welfare, health, and safety of the citizens of Chattanooga, Tennessee; and

WHEREAS, the City is empowered to enact such ordinances pursuant to its Charter and the general laws of the State of Tennessee; and

WHEREAS, the Board of Commissioners deems it necessary to provide for licensing and regulation of adult-oriented establishments including, but not limited to, adult

ter requirements. While the plaintiffs, not employing any entertainers, have no standing to question the constitutionality of these requirements, the Court would observe that the same analysis would be applied to the permitting requirements for entertainers as to the licensing requirements for operators.

book stores, adult mini-motion picture establishments, adult entertainment studios, and adult motion picture theaters, specifically including "peep" shows for the viewing of adult-oriented films or live entertainment; and

WHEREAS, it has developed over a period of time that large numbers of persons, primarily males, frequent the so-called adult book stores which also usually contain adult mini-motion picture shows which can be activated upon depositing a certain amount of money in a viewing machine; and

WHEREAS, booths, cubicles, studios and rooms are being used by customers of said establishments for the purpose of engaging in certain sexual acts, particularly between males; and

WHEREAS, since 1981 and to October 10, 1985, there have been a number of reported cases of Acquired Immune Deficiency Syndrome (AIDS) (HTLV–III) in Tennessee [3 in 1982, 4 in 1983, 21 in 1984, and 28 through October 10, 1985] while the United States as a whole reported 600 in 1982, 2,200 in 1983, 4,600 in 1984 and 6,400 during the first nine months of 1985; and

WHEREAS, as of October, 1985, there were 56 cases of AIDS in Tennessee, 14,-500 cases of AIDS in the United States with 7,300 reported deaths and of the 14,-500, 13,480 were males and 1,020 were females; and

WHEREAS, out of the 56 cases of AIDS in Tennessee, there were 30 deaths, and of the 56 there were 54 males and 2 females; and

WHEREAS, as of November 22, 1985, there were six individuals in Chattanooga with positive tests for AIDS and 4 patients with repeat positive tests for a total of 10; and

WHEREAS, according to the Center for Disease Control (CDC) in Atlanta, Georgia, in a bulletin dated November 15, 1985, the public was being advised that AIDS has been found to be transmitted through sexual contact, exposure to infected blood or blood components, and that the virus had been found in semen, saliva, tears, breast milk and urine as well as blood; and

WHEREAS, upon inspection by members of the Chattanooga Police Department, representatives of the news media, and Building and Health Inspectors, blood, semen, and urine have been found in the areas where persons view adult-oriented films or witness sexually-explicit live entertainment; and

WHEREAS, the CDC has issued recommendations for the sterilization and disinfecting housekeeping to prevent transmission of AIDS which such adult-oriented establishments should follow to make their premises sanitary; and

WHEREAS, the CDC has advised that persons testing positive for AIDS, or known to have AIDS, should not donate blood or other organs, avoid exposing others through sexual contact, avoid exposing others to saliva, avoid sharing hypodermic needles, toothbrushes, razors, etc.; and

WHEREAS, the spread of AIDS is reaching near epidemic proportions in the United States, particularly in the larger metropolitan areas, with proportionate increases in the smaller metropolitan areas (e.g., there were 4,903 cases in New York and 3,150 in California as of October 7, 1985, according to the CDC).

NOW, THEREFORE,

BE IT ORDAINED BY THE BOARD OF COMMISSIONERS OF THE CITY OF CHATTANOOGA, TENNESSEE:

*SECTION 1. Findings and Purpose.*

(a) The Board of Commissioners of the City of Chattanooga, Tennessee, finds:

(1) That homogeneous and heterogeneous masturbastory acts and other sexual acts, including oral sex acts, are being done in adult-oriented establishments in the City of Chattanooga.

(2) That offering and providing such space, areas, and rooms where such activities may take place creates conditions that generate prostitution and other crimes.

(3) That several days and nights of the week such adult-oriented establishments, particularly adult book stores containing mini-motion picture facilities, are overcrowded and contain more persons than such structures can safely accommodate resulting in a definite fire hazard since in the event of fire such persons would not be able to safely leave all the cubicles, booths and rooms of such establishments.

(4) That male prostitutes, particularly teenage males, frequent said establishments for the purpose of providing, within the premises of such establishments, sex-for-hire.

(5) That the continued unregulated operation of adult-oriented establishments would be detrimental to the general welfare, health, and safety of the citizens of the City of Chattanooga.

(b) It is the purpose of this ordinance to promote and secure the general welfare, health, and safety of the citizens of the City of Chattanooga.

*SECTION 2. Definitions.*

For the purpose of this ordinance, the words and phrases used herein shall have the following meanings, unless otherwise clearly indicated by the context:

(a) "Adult-oriented establishment", shall include, but not limited to, "adult bookstores", "adult motion picture theaters", "adult mini-motion picture establishments", or "adult cabaret" and further means any premises to which the public patrons or members are invited or admitted and which are so physically arranged as to provide booths, cubicles, rooms, compartments or stalls separate from the common areas of the premises for the purpose of viewing adult-oriented motion pictures, or wherein an entertainer provides adult entertainment to a member of the public, a patron or a member, when such adult entertainment is held, conducted, operated or maintained for a profit, direct or indirect. An "adult-oriented establishment" further includes, without being limited to, any "adult entertainment studio" or any premises that is physically arranged and used as such, whether advertised or represented as an adult entertainment studio, rap studio, exotic dance studio, encounter studio, sensitivity studio, modeling studio or any other term of like import.

(b) "Adult bookstore" means an establishment having as a substantial or significant portion of its stock and trade in books, films, video cassettes, or magazines and other periodicals which are distinguished or characterized by their emphasis on matter depicting, describing or relating to "specified sexual activities" or "specified anatomical areas" as defined below, and in conjunction therewith have facilities for the presentation of adult entertainment, as defined below, and including adult-oriented films, movies, or live entertainment, for observation by patrons therein.

(c) "Adult motion picture theater" means an enclosed building with a capacity of fifty (50) or more persons regularly used for presenting material having as a dominant theme or presenting material distinguished or characterized by an emphasis on matter depicting, describing or relating to "specified sexual activities" or "specified anatomical areas," as defined below, for observation by patrons therein.

(d) "Adult mini-motion picture theater" means an enclosed building with a capacity of less than fifty (50) persons regularly used for presenting material distinguished or characterized by an emphasis on matter depicting, describing or relating to "specified sexual activities" or "specified anatomical areas," as defined below, for observation by patrons therein.

(e) "Adult cabaret" means a cabaret which features topless dancers, go-go dancers, exotic dancers, strippers, male or female impersonators, or similar entertainers.

(f) "Board" means the Board of Commissioners of the City of Chattanooga, Tennessee.

(g) "Employee" means any and all persons, including independent contractors, who work in or at or render any services directly related to the operation of an adult-oriented establishment.

(h) "Entertainer" means any person who provides entertainment within an adult-oriented establishment as defined in this section, whether or not a fee is charged or accepted for entertainment and whether or not entertainment is provided as an employee or an independent contractor.

(i) "Adult Entertainment" means any exhibition of any adult-oriented motion pictures, live performance, display or dance of any type, which has as a significant or substantial portion of such performance any actual or simulated performance of specified sexual activities or exhibition and viewing of specified anatomical areas, removal of articles of clothing or appearing unclothed, pantomine, modeling, or any other personal service offered customers.

(j) "Operators" means any person, partnership, or corporation operating, conducting or maintaining an adult-oriented establishment.

(k) "Specified sexual activities" means:

(1) Human genitals in a state of sexual stimulation or arousal;

(2) Acts of human masturbation, sexual intercourse or sodomy;

(3) Fondling or erotic touching of human genitals, pubic region, buttock or female breasts.

(l) "Specified anatomical areas" means:

(1) Less than completely and opaquely covered:

(i) Human genitals, pubic region;

(ii) Buttocks;

(iii) Female breasts below a point immediately above the top of the areola; and

(2) Human male genitals in a discernably turgid state, even if completely opaquely covered.

### SECTION 3. License Required.

(a) Except as provided in subsection (e) below, from and after the effective date of this ordinance, no adult-oriented establishment shall be operated or maintained in the City of Chattanooga without first obtaining a license to operate issued by the City of Chattanooga.

(b) A license may be issued only for one (1) adult-oriented establishment located at a fixed and certain place. Any person, partnership, or corporation which desires to operate more than one adult-oriented establishment must have a license for each.

(c) No license or interest in a license may be transferred to any person, partnership or corporation.

(d) It shall be unlawful for any entertainer, employee or operator to knowingly work in or about, or to knowingly perform any service directly related to the operation of any unlicensed adult-oriented establishment.

(e) All existing adult-oriented establishments at the time of the passage of this ordinance must submit an application for a license within one hundred twenty (120) days of the passage of this ordinance on third and final reading. If a license is not issued within said one hundred twenty (120) day period, then such existing adult-oriented establishment shall cease operations.

### SECTION 4. Application for License.

(a) Any person, partnership, or corporation desiring to secure a license shall make application to the City Treasurer. The application shall be filed in triplicate with and dated by the City Treasurer. A copy of the application shall be distributed promptly by the City Treasurer to the Chattanooga Police Department and to the applicant.

(b) The application for a license shall be upon a form provided by the City Treasurer. An applicant for a license including any partner or limited partner of the part-

nership applicant, and any officer or director of the corporate applicant and any stockholder holding more than five (5) percent of the stock of a corporate applicant, or any other person who is interested directly in the ownership or operation of the business, shall furnish the following information under oath:

(1) Name and address, including all aliases.

(2) Written proof that the individual is at least eighteen (18) years of age.

(3) All residential addresses of the applicant for the past three (3) years.

(4) The applicant's height, weight, color of eyes and hair.

(5) The business, occupation or employment of the applicant for five (5) years immediately preceding the date of the application.

(6) Whether the applicant previously operated in this or any other county, city or state under an adult-oriented establishment license or similar business license; whether the applicant has ever had such a license revoked or suspended, the reason therefor, and the business entity or trade name under which the applicant operated that was subject to the suspension or revocation.

(7) All criminal statutes, whether federal or state, or city ordinance violation convictions, forfeiture of bond and pleadings of *nolo contendere* on all charges, except minor traffic violations.

(8) Fingerprints and two (2) portrait photographs at least two (2) inches by two (2) inches of the applicant.

(9) The address of the adult-oriented establishment to be operated by the applicant.

(10) The names and addresses of all persons, partnerships, or corporations holding any beneficial interest in the real estate upon which such adult-oriented establishment is to be operated, including but not limited to, contract purchasers or sellers, beneficiaries of land trust or lessees subletting to applicant.

(11) If the premises are leased or being purchased under contract, a copy of such lease or contract shall accompany the application.

(12) The length of time the applicant has been a resident of the City of Chattanooga, or its environs, immediately preceding the date of the application.

(13) If the applicant is a corporation, the application shall specify the name of the corporation, the date and state of incorporation, the name and address of the registered agent and the name and address of all principal shareholders, officers and directors of the corporation.

(14) A statement by the applicant that he or she is familiar with the provisions of this ordinance and is in compliance with them.

(15) Written statements of at least five (5) persons who are not related to the applicant that the applicant is of good moral character.

(16) All inventory, equipment, or supplies which are to be leased, purchased, held in consignment or in any other fashion kept on the premises or any part or portion thereof for storage, display, any other use therein, or in connection with the operation of said establishment, or for resale, shall be identified in writing accompanying the application specifically designating the distributor business name, address, phone number, and representative's name.

(c) Within ten (10) days of receiving the results of the investigation conducted by the Chattanooga Police Department, the City Treasurer shall notify the applicant that his application is granted, denied or held for further investigation. Such additional investigation shall not exceed an additional thirty (30) days unless otherwise agreed to by the applicant. Upon the conclusion of such additional investigation, the City Treasurer shall advise the applicant in

writing whether the application is granted or denied.

(d) Whenever an application is denied or held for further investigation, the City Treasurer shall advise the applicant in writing of the reasons for such action. If the applicant requests a hearing within ten (10) days of receipt of notification of denial, a public hearing shall be held thereafter before the Board of Commissioners at which time the applicant may present evidence bearing upon the question.

(e) Failure or refusal of the applicant to give any information relevant to the investigation of the application, or his or her refusal or failure to appear at any reasonable time and place for examination under oath regarding said application or his or her refusal to submit to or cooperate with any investigation required by this ordinance, shall constitute an admission by the applicant that he or she is ineligible for such license and shall be grounds for denial thereof by the City Treasurer.

*SECTION 7. Standards for Issuance of License.*

(a) To receive a license to operate an adult-oriented establishment, an applicant must meet the following standards:

(1) If the applicant is an individual:

(i) The applicant shall be at least eighteen (18) years of age and a person of good moral character and reputation in the community in which he or she resides.

(ii) The applicant shall not have been convicted of or pleaded *nolo contendere* to a felony or any crime involving moral turpitude, prostitution, obscenity or other crime of a sexual nature in any jurisdiction within five (5) years immediately preceding the date of the application.

(iii) The applicant shall have been a resident of the City of Chattanooga, or its environs, continuously for thirty (30) days immediately preceding the date of the application.

(iv) The applicant shall not have been found to have previously violated this ordinance within five (5) years immedi-ately preceding the date of the application.

(2) If the applicant is a corporation:

(i) All officers, directors and stockholders required to be named under Section 4(b) shall be at least eighteen (18) years of age, and be persons of good moral character and reputation in the community(ies) in which they reside.

(ii) No officer, director or stockholder required to be named under Section 4(b) shall have been convicted of or pleaded *nolo contendere* to a felony or any crime involving moral turpitude, prostitution, obscenity or other crime of a sexual nature in any jurisdiction within five (5) years immediately preceding the date of the application;

(iii) At least one (1) officer or director shall have been a resident of the City of Chattanooga, or its environs, continuously for thirty (30) days immediately preceding the date of the application;

(iv) No officer, director, or stockholder required to be named under Section 4(b) shall have been found to have previously violated this ordinance within five (5) years immediately preceding the date of the application.

(3) If the applicant is a partnership, joint venture, or any other type of organization where two (2) or more persons have a financial interest:

(i) All persons having a financial interest in the partnership, joint venture or other type of organization shall be at least eighteen (18) years of age, and persons of good moral character and reputation in the community(ies) in which they reside.

(ii) No persons having a financial interest in the partnership, joint venture or other type of organization shall have been convicted of or pleaded *nolo contendere* to a felony or any crime involving moral turpitude, prostitution, obscenity or other crime of a sexual nature in any jurisdiction within five (5) years immediately preceding the date of the application;

(iii) At least one (1) person having a financial interest in the partnership, joint venture or other type of organization shall have been a resident of the City of Chattanooga, or its environs, continuously for thirty (30) days immediately preceding the date of the application;

(iv) No person having a financial interest in the partnership, joint venture or other type of organization shall have been found to have violated any provision of this ordinance within five (5) years immediately preceding the date of the application.

(b) No license shall be issued unless the Chattanooga Police Department has investigated the applicant's qualifications to be licensed. The results of that investigation shall be filed in writing with the City Treasurer no later than twenty (20) days after the date of the application.

*SECTION 6. Permit Required.*

In addition to the license requirements previously set forth for owners and operators of "adult-oriented establishments", no person shall be an entertainer in an adult-oriented establishment without first obtaining a valid permit issued by the City Treasurer.

*SECTION 7. Application for Permit.*

(a) Any person desiring to secure a permit shall make application to the City Treasurer. The application shall be filed in triplicate with and dated by the City Treasurer. A copy of the application shall be distributed promptly by the City Treasurer to the Chattanooga Police Department and to the applicant.

(b) The application for a permit shall be upon a form provided by the City Treasurer. An applicant for a permit shall furnish the following information under oath:

(1) Name and address, including all aliases.

(2) Written proof that the individual is at least eighteen (18) years of age.

(3) All residential addresses of the applicant for the past three (3) years.

(4) The applicant's height, weight, color of eyes, and hair.

(5) The business, occupation or employment of the applicant for five (5) years immediately preceding the date of the application.

(6) Whether the applicant, while previously operating in this or any other city or state under an adult-oriented establishment permit or similar business for whom applicant was employed or associated at the time, has ever had such a permit revoked or suspended, the reason therefor, and the business entity or trade name for whom applicant was employed or associated at the time of such suspension or revocation.

(7) All criminal statutes, whether federal, state or city ordinance violation, convictions, forfeiture of bond and pleadings of *nolo contendere* on all charges, except minor traffic violations.

(8) Fingerprints and two (2) portrait photographs at least two (2) inches by two (2) inches of the applicant.

(9) The length of time the applicant has been a resident of the City of Chattanooga, or its environs, immediately preceding the date of the application.

(10) A statement by the applicant that he or she is familiar with the provisions of this ordinance and is in compliance with them.

(11) Written statements of at least five (5) persons who are not related to the applicant that the applicant is of good moral character.

(c) Within ten (10) days of receiving the results of the investigation conducted by the Chattanooga Police Department, the City Treasurer shall notify the applicant that his application is granted, denied, or held for further investigation. Such additional investigation shall not exceed an additional thirty (30) days unless otherwise agreed to by the applicant. Upon the conclusion of such additional investigations, the City Treasurer shall advise the appli-

cant in writing whether the application is granted or denied.

(d) Whenever an application is denied or held for further investigation, the City Treasurer shall advise the applicant in writing of the reasons for such action. If the applicant requests a hearing within ten (10) days of receipt of notification of denial, a public hearing shall be held thereafter before the Board of Commissioners at which time the applicant may present evidence bearing upon the question.

(e) Failure or refusal of the applicant to give any information relevant to the investigation of the application, or his or her refusal or failure to appear at any reasonable time and place for examination under oath regarding said application or his or her refusal to submit to or cooperate with any investigation required by this Ordinance, shall constitute an admission by the applicant that he or she is ineligible for such permit and shall be grounds for denial thereof by the Board.

### SECTION 8. Standards for Issuance of Permit.

(a) To receive a permit as an entertainer, an applicant must meet the following standards:

(1) The applicant shall be at least 18 years of age.

(2) The applicant shall have been a resident of the City of Chattanooga continuously for at least thirty (30) days immediately preceding the date of application.

(3) The applicant shall not have been convicted of or pleaded no contest to a felony or any crime involving moral turpitude or prostitution, obscenity or other crime of a sexual nature in any jurisdiction within five (5) years immediately preceding the date of the application.

(4) The applicant shall be a person of good moral character and reputation in the community in which he or she resides.

(5) The applicant shall not have been found to violate any provision of this ordinance within five (5) years immediately preceding the date of the application.

(b) No permit shall be issued until the Chattanooga Police Department has investigated the applicant's qualifications to receive a permit. The results of that investigation shall be filed in writing with the City Treasurer not later than twenty (20) days after the date of the application.

### SECTION 9. Fees.

(a) A license fee of Five Hundred ($500.00) Dollars shall be submitted with the application for a license. If the application is denied, one-half ($\frac{1}{2}$) of the fee shall be returned.

(b) A permit fee of One Hundred ($100.00) Dollars shall be submitted with the application for a permit. If the application is denied, one-half ($\frac{1}{2}$) of the fee shall be returned.

### SECTION 10. Display of License or Permit.

(a) The license shall be displayed in a conspicuous public place in the adult-oriented establishment.

(b) The permit shall be carried by an entertainer upon his or her person and shall be displayed upon request of a customer, any member of the Chattanooga Police Department, or any person designated by the Board of Commissioners.

### SECTION 11. Renewal of License or Permit.

(a) Every license issued pursuant to this Ordinance will terminate at the expiration of one (1) year from the date of issuance, unless sooner revoked, and must be renewed before operation is allowed in the following year. Any operator desiring to renew a license shall make application to the City Treasurer. The application for renewal must be filed not later than sixty (60) days before the license expires. The application for renewal shall be filed in triplicate with and dated by the City Treasurer. A copy of the application for renewal shall be distributed promptly by the City Treasurer to the Chattanooga Police Department and to the operator. The applica-

tion for renewal shall be upon a form provided by the City Treasurer and shall contain such information and data, given under oath or affirmation, as may be required by the Board of Commissioners.

(b) A license renewal fee of Five Hundred ($500.00) Dollars shall be submitted with the application for renewal. In addition to the renewal fee, a late penalty of One Hundred ($100.00) Dollars shall be assessed against the applicant who files for a renewal less than sixty (60) days before the license expires. If the application is denied, one-half (½) of the total fees collected shall be returned.

(c) If the Chattanooga Police Department is aware of any information bearing on the operator's qualifications, that information shall be filed in writing with the City Treasurer.

(d) Every permit issued pursuant to this Ordinance will terminate at the expiration of one (1) year from the date of issuance unless sooner revoked, and must be renewed before an entertainer is allowed to provide entertainment in an adult-oriented establishment in the following calendar year. Any entertainer desiring to renew a permit shall make application to the City Treasurer. The application for renewal must be filed not later than sixty (60) days before the permit expires. The application for renewal shall be filed in triplicate with and dated by the City Treasurer. A copy of the application for renewal shall be distributed promptly by the City Treasurer to the Chattanooga Police Department and to the entertainer. The application for renewal shall be upon a form provided by the City Treasurer and shall contain such information and data, given under oath or affirmation, as may be required by the City Treasurer.

(e) A permit renewal fee of One Hundred ($100.00) Dollars shall be submitted with the application for renewal. In addition to said renewal fee, a late penalty of Fifty ($50.00) Dollars shall be assessed against the applicant who files for renewal less than sixty (60) days before the license ex-

pires. If the application is denied, one-half (½) of the fee shall be returned.

(f) If the Chattanooga Police Department is aware of any information bearing on the entertainer's qualifications, that information shall be filed in writing with the City Treasurer.

*SECTION 12. Revocation of License or Permit.*

(a) The Board of Commissioners shall revoke a license or permit for any of the following reasons:

(1) Discovery that false or misleading information or data was given on any application or material facts were omitted from any application.

(2) The operator or entertainer, or any employee of the operator, violates any provision of this Ordinance or any rule or regulation adopted by the Board of Commissioners pursuant to this Ordinance; provided, however, that in the case of a first offense by an operator where the conduct was solely that of an employee, the penalty shall not exceed a suspension of thirty (30) days if the Board shall find that the operator had no actual or constructive knowledge of such violation and could not by the exercise of due diligence have had such actual or constructive knowledge.

(3) The operator or entertainer becomes ineligible to obtain a license or permit.

(4) Any cost or fee required to be paid by this Ordinance is not paid.

(5) An operator employs an entertainer who does not have a permit or provides space on the premises, whether by lease or otherwise, to an independent contractor who performs as an entertainer without a permit.

(6) Any intoxicating liquor or cereal malt beverage is served or consumed on the premises of the adult-oriented establishment.

(b) The Board, before revoking or suspending any license or permit, shall give the operator or entertainer at least ten (10)

days' written notice of the charges against him or her and the opportunity for a public hearing before the Board at which time the operator or entertainer may present evidence bearing upon the question. In such cases, the charges shall be specific and in writing.

(c) The transfer of a license or any interest in a license shall automatically and immediately revoke the license. The transfer of any interest in a non-individual operator's license shall automatically and immediately revoke the license held by the operator.

(d) Any operator or entertainer whose license or permit is revoked shall not be eligible to receive a license or permit for five (5) years from the date of revocation. No location or premises for which a license has been issued shall be used as an adult-oriented establishment for two (2) years from the date of revocation of the license.

SECTION 13. *Hours of Operation.*

(a) No adult-oriented establishment shall be open between the hours of 3:00 a.m. and 8:00 a.m. on weekdays or between the hours of 3:00 a.m. and 12:00 noon on Sundays.

(b) All adult-oriented establishments shall be open to inspection at all reasonable times by the Chattanooga Police Department or such other persons as the Board of Commissioners may designate.

SECTION 14. *Responsibilities of the Operator.*

(a) The operator shall maintain a register of all employees, showing the name, and aliases used by the employee, home address, age, birthdate, sex, height, weight, color of hair and eyes, phone numbers, Social Security Number, date of employment and termination, and duties of each employee and such other information as may be required by the Board of Commissioners. The above information on each employee shall be maintained in the register on the premises for a period of three (3) years following termination.

(b) The operator shall make the register of employees available immediately for inspection by police upon demand of a member of the Chattanooga Police Department at all reasonable times.

(c) Every act or omission by an employee constituting a violation of the provisions of this Ordinance shall be deemed the act or omission of the operator if such act or omission occurs either with the authorization, knowledge, or approval of the operator, or as a result of the operator's negligent failure to supervise the employee's conduct, and the operator shall be punishable for such act or omission in the same manner as if the operator committed the act or caused the omission.

(d) An operator shall be responsible for the conduct of all employees while on the licensed premises and any act or omission of any employee constituting a violation of the provisions of this Ordinance shall be deemed the act or omission of the operator for purposes of determining whether the operator's license shall be revoked, suspended or renewed.

(e) There shall be posted and conspicuously displayed in the common areas of each adult-oriented establishment a list of any and all entertainment provided on the premises. Such list shall further indicate the specific fee or charge in dollar amounts for each entertainment listed. Viewing adult-oriented motion pictures shall be considered as entertainment. The operator shall make the list available immediately upon demand of the Chattanooga Police Department at all reasonable times.

(f) No employee of an adult-oriented establishment shall allow any minor to loiter around or to frequent an adult-oriented establishment or to allow any minor to view adult entertainment as defined herein.

(g) Every adult-oriented establishment shall be physically arranged in such a manner that the entire interior portion of the booths, cubicles, rooms or stalls, wherein adult entertainment is provided, shall be visible from the common area of the premises. Visibility shall not be blocked or obscured by doors, curtains, partitions, drapes, or any other obstruction whatsoev-

er. It shall be unlawful to install booths, cubicles, rooms or stalls within adult-oriented establishments for whatever purpose, but especially for the purpose of secluded viewing of adult-oriented motion pictures or other types of adult entertainment.

(h) The operator shall be responsible for and shall provide that any room or area used for the purpose of viewing adult-oriented motion pictures or other types of live adult entertainment shall be readily accessible at all times and shall be continuously opened to view in its entirety.

(i) No operator, entertainer, or employee of an adult-oriented establishment shall demand or collect all or any portion of a fee for entertainment before its completion.

(j) A sign shall be conspicuously displayed in the common area of the premises, and shall read as follows:

THIS ADULT–ORIENTED ESTABLISHMENT IS REGULATED BY CHATTANOOGA CITY CODE, PART II, ARTICLE ___, SECTION _____, ENTERTAINERS ARE:

1. Not permitted to engage in any type of sexual conduct;
2. Not permitted to expose their sex organs;
3. Not permitted to demand or collect all or any portion of a fee for entertainment before its completion.

*SECTION 15. Prohibitions and Unlawful Sexual Acts.*

(a) No operator, entertainer, or employee of an adult-oriented establishment shall permit to be performed, offer to perform, perform or allow patrons to perform sexual intercourse or oral or anal copulation or other contact stimulation of the genitalia.

(b) No operator, entertainer, or employee shall encourage or permit any person upon the premises to touch, caress, or fondle the breasts, buttocks, anus or genitals of any other person.

(c) No operator, entertainer, employee, or customer shall be unclothed or in such attire, costume, or clothing so as to expose to view any portion of the sex organs, breasts or buttocks of said operator, entertainer, or employee with the intent to arouse or gratify the sexual desires of the operator, entertainer, employee, or customer.

*SECTION 16. Penalties and Prosecution.*

(a) Any person, partnership, or corporation who is found to have violated this Ordinance shall be fined a definite sum not exceeding Fifty ($50.00) Dollars and shall result in the suspension or revocation of any permit or license.

(b) Each violation of this ordinance shall be considered a separate offense, and any violation continuing more than one hour of time shall be considered a separate offense for each hour of violation.

*SECTION 17. Invalidity of Part.*

Should any court of competent jurisdiction declare any section, clause, or provision of this Ordinance to be unconstitutional, such decision shall affect only such section, clause, or provision so declared unconstitutional, and shall not affect any other section, clause or provision of this Ordinance.

*SECTION 18.* This Ordinance shall take effect two weeks from and after its passage as provided by law.

PASSED On Third and Final
Reading 3/4/86

/s/ Gene Roberts
MAYOR

/s/ Tom Kennedy
COMMISSIONER